Gilmer *v*. Lime Point.

# GILMER *v*. LIME POINT.

PROCEEDINGS taken under the Act of 1859 (Stat. 1859, 26) for the condemnation of land at Lime Point in this State, for a United States Fort, are those of a special inquisition, and though taken by the District Court or Judge, are to be construed not by the general rules applicable to Courts of general jurisdiction, but as the acts of a Court sitting under a limited, special, statutory authority.

The United States can acquire title to the land under the Act of 1859 only by pursuing the provisions of the act.

The Act of 1859 does not give the United States any unqualified right to cause the forced sale or to condemn the land, but only a right qualified by the existence of the particular fact recited in the act, to wit: the disagreement between the United States and the owners as to the price. If there be no disagreement as to the price, and if, as defendants contend, the Government has contracted to purchase at a sum agreed upon, these proceedings to condemn the land must fall.

Statutes like this Act of 1859 are in derogation of general right and of common law modes of procedure, and must be strictly construed.

APPEAL from the Seventh District.

Proceedings to condemn land. For the previous history of the case, see *Gilmer* v. *Lime Point* (18 Cal. 229). As stated in that case, the United States District Attorney joined issue as to the constitutionality of the Act of 1859, 26, mentioned in the plea of Throckmorton, and averred the use named in the application herein to be a "public use," within the Constitution of California. He also demurred to the plea of Throckmorton on the ground that it "undertakes to traverse and avoid certain allegations in the said application made, which are not traversable or avoidable in said proceeding." After the return of the cause to the Court below, in pursuance of the opinion of this Court, the following proceedings were had:

Barton Ricketson filed an amended intervention setting out particularly his claim, to wit: a mortgage executed in 1852 by Wm. A. Richardson, grantee from the Mexican Government, of a ranch known as the Saucelito Rancho, embracing Lime Point, to secure three notes, amounting to $9,220, drawing five per cent. per month interest, excepting one for $3,320, which drew six per cent. per month.

This amended intervention waives all "right to the action of this

Court, in its proceeding to condemn said tract, and submits to a fair valuation thereof according to law."

*Throckmorton* filed the following answer, verified :

" And now comes S. R. Throckmorton, one of the defendants, and for answer to the application of the complainant, says : He admits that the United States have been desirous of purchasing the tract of land mentioned, but denies that they are now desirous of doing so, having already purchased said land, as hereinafter mentioned. He denies that any disagreement in price has ever existed since February 19th, 1858, the date of said purchase, or now exists between himself and the United States concerning the purchase of said land. He admits he demanded two hundred thousand dollars therefor, and avers that the United States made an agreement, evidenced by writing, to pay him that sum therefor, as is hereinafter mentioned. And if, by the complaint's allegation that this defendant has declined and now declines to receive a less sum, it be meant that the United States has ever offered him a less sum for the said tract, then this defendant denies that he has ever declined to take for said tract the said sum of $200,000, or any greater or any less sum, offered him by the said United States, and he denies that he has ever declined any offer whatever made to him therefor by the United States. And he denies that the sum of $200,000 is an unreasonable and excessive price for said land, but on the contrary, avers that it is worth much more money. And he avers that neither the United States, nor any one on their behalf, has ever, at any time, rendered him any sum of money as the price, or made him any offer of any price different from that agreed on as hereafter mentioned ; and he avers that no demand has ever been made upon him by any one at any time to convey said land to the United States. And he denies that he has ever refused, and he denies that he now refuses to convey the said land to the United States, for any reason whatever, and he denies that he has been often, or ever once, requested to do so ; and he avers on information and belief, that on March 3d, 1857, Congress appropriated three hundred thousand dollars for the purchase of said tract and the commencement of defensive works thereon ; and he avers that in

the years 1855 and 1856 certain military officers of the United States negotiated with this defendant, for the purchase of said land, and on or about February 19th, 1858, the United States purchased said land of this defendant for the sum of two hundred thousand dollars.    And he avers that he is owner of lands of Rancho Saucelito, of which the lands aforesaid is a part, and that said lands of the Rancho Saucelito adjoining the boundaries mentioned in complainant's application will be rendered less accessible and lessened in value if the land described in said application be used for military purposes, to the great damage of this defendant. Wherefore he prays this application be dismissed, with costs."

J. Mora Moss intervened, claiming to be the owner of a mortgage upon the land in question, also executed by said Richardson, and of a decree foreclosing the same; and denying that the United States are desirous of purchasing the land; averring that it was purchased of Throckmorton, the owner thereof, February 19th, 1858, for $200,000, adopting Throckmorton's answer, and praying that the proceedings be dismissed.

William Hood, Benjamin Davidson, and John Young, executor of the estate of Robert Walkinshaw, deceased, intervened, also claiming to be the owners of a mortgage amounting to about $400,000, drawing interest at five per cent. per month; denying that the United States are desirous of purchasing the land; averring Throckmorton to be the owner, joining in most of his allegations, and averring also that the proceedings herein are irregular, informal and that proper notice has not been given, etc.; that the same was improperly and irregularly made and issued by the Sheriff, when it should have been made and issued by and from the Court or the Judge thereof; that said notice was not published as appears by the proof of publication thereof as by law required; that the same should have been published in at least two newspapers, one published nearest the land, and also one published in San Francisco. Also, that the day for empannelling the jury is passed, and the Court has no power or jurisdiction to empannel a jury under the said notice; and praying that the proceedings be dismissed.

To the answer of Throckmorton and the intervention of Moss, the applicant demurred, on the grounds: 1st, that the said answer

does not state facts sufficient to constitute a defense for the reasons following among others:

It traverses the desire. to purchase alleged in the application, which is not permissible, because that fact is merely preliminary to the issue of the order of notice, and is only required to appear by the application, and needs no other proof;

It traverses the allegations of disagreement, which is not permissible for the same reason;

It avers that Throckmorton declined to take any particular sum for the tract in question, which is irresponsive to anything alleged in the complaint;

It traverses the allegation that Throckmorton refused to convey to the United States.

To the intervention of Hood, Davidson and Young, applicant demurred, on the ground, that it does not state facts sufficient to constitute a defense: because, 1st, it traverses the allegation that the United States desire to purchase the land; and because, 2d, it sets up purchase of the land by the United States.

A. G. Dallas intervened, claiming as owner of a decree foreclosing a mortgage executed by Richardson, amounting to $35,055.33, and ordering the Saucelito Rancho to be sold to pay it. Prayer that if the land be condemned, intervenor's interest be protected.

John Parrott intervened, claiming a lien on the land by virtue of a judgment against Richardson for $7,969.10, with interest thereon at four per cent. per month, duly recorded in Marin county where the land lies.

The applicant filed the following replication:

And now comes Gilmer by his counsel, Benham, and for replication to the answers and interventions filed in the above entitled proceedings, says: that upon information and belief, he reiterates his allegation, that $200,000 is an unreasonable and excessive price for the tract of land described in his application, and he denies, upon information and belief, that the same is not an excessive, unreasonable and exorbitant price for the said tract. And he says, that he is informed and believes, that the lands, part of the Rancho of Saucelito, adjoining the said tract called Lime Point, will not be lessened in value if the said tract is used for military purposes, and

Gilmer *v.* Lime Point.

he therefore denies, upon his information and belief, that the said adjoining lands will be lessened in value on account of said use to the great damage of said Throckmorton, and denies that it is material, and avers that it is not material what effect is produced on said adjoining lands.   And he denies, upon his information and belief, that the said adjoining land will be rendered less accessible to the great damage of the said Throckmorton by being used for military purposes, or that they will be lessened in value on account of any change in the accessibility caused by their being so used ; and denies that it is material, and avers it is not material what effect is produced on said adjoining lands by such use.   And he says he is advised by his counsel, and believes, as it is decided by the Court now here, that the proceedings had by him in this behalf are not irregular, informal and insufficient in law, and he therefore denies that the same are irregular, informal and insufficient in law.  And he says the notice given in this cause by Valentine Doub, Esq., the Sheriff of the county of Marin, was made, published and styled properly and according to law ; and he denies that the same was not made, published and styled properly and according to law.   And he says that the day for empannelling a jury has not passed, and that the Court has full power to empannel a jury.   Prayer for a jury to assess the value of the land.

This cause was called for trial at the July Term, 1861.   The defendant objected to proceeding with the trial, on the grounds following, to wit :

1st.  The notice to all parties interested, required by the statute, had not been given, as it appeared that publication had been made in one newspaper only, and had not issued or been made by the Court.

On the trial, defendants' objection to proceeding on several grounds, as want of due notice, etc., having been overruled, the demurrer of the applicant to the plea to the jurisdiction filed by defendant, Throckmorton, was argued, and the plea overruled as insufficient in law, the defendant excepting.

The applicant's demurrer to the answers of the defendants, Throckmorton, Hood, Davidson, and Young, executor, etc., Parrott, Dallas and Moss, was sustained, and said answers adjudged insufficient in

law, in so far as they set up and averred the existence of a contract between defendant Throckmorton and the United States, for the purchase of the land in question, and in so far as said answers denied that said United States were desirous of purchasing said land, and in so far as said answers denied that said Throckmorton had refused to convey said land to the United States, and in so far as said answers denied the existence of a disagreement in price between the United States and defendant Throckmorton touching the purchase of said land; and the defendant excepted to the ruling of the Court sustaining said demurrer. Defendants here introduced various witnesses as to the value of the land.

The defendants, in order to show the value of said land, offered in evidence certain documents numbered eleven, twelve, twenty-four, twenty-nine, thirty, thirty-one, thirty-two, thirty-three, to be found in the Report No. 389 of the Senate Committee on Military Affairs and the Militia of the 35th Congress, 2d Session, on pages 20, 21, 22, 29, 32, 33, 34, 35, and three other documents, which documents defendants offered as a contract between the defendant Throckmorton and the United States for the purchase of the said tract of land at the price of $200,000.

The applicant objected to the evidence, on the ground of irrelevancy to the issue, that it was hearsay; did not prove a contract; was no estoppel; would present to the jury by indirection, what it had been ruled by the Court was not for their consideration; that is to say, the question, whether or not there had been a purchase of the said tract by the United States, as claimed by virtue of the documents aforesaid; would abuse the minds of the jury and induce them to adopt the sum of $200,000, fixed by the said supposed contract, by their verdict, as the value of the said tract, regardless whether it coincided with the true value of the same or not.

The Court sustained the objection and ruled out the evidence, and the defendants excepted.

James B. McPherson, a lieutenant in the corps of Engineers of the United States Army, and who had examined the premises, and a witness for Throckmorton and the contesting intervenors, was asked by their counsel the question: What is the value of the premises as a site for fortification? The same question was asked

Gilmer *v.* Lime Point.

of James Ross, also a witness for the defendants.   Whereupon, counsel for the applicant objected to the question, on the grounds that the value of the premises as a site for fortification was a future prospective value, and was inappreciable in money, and could not be measured thereby for want of a safe, certain and practical standard.   And that the premises could not have a market value, particularly as a site for fortification, because there was no market for land for such purposes, competition being essential to a market, and the Government being of necessity without a competitor in purchases of land for purposes of fortification.   That the question was calculated both in substance and form to mislead the jury. That, as the only limitation which could be put on the exercise of the right of the eminent domain was to make what the Constitution provided for—" compensation " to the owner, to offer testimony to prove the value of the premises as a site for fortification, (which it was impossible to estimate) was therefore to address the evidence, not to the issue—the ascertainment of what would be " compensation " to the owner—but the discovery of the extent of the peculiar benefit to the purchaser.   That it was otherwise irrelevant, and that any present market value the premises might have peculiarly as a site for fortification, if they could have any such, could be predicated only upon their susceptibility of being made the instrument of obtaining from the Government more than the value of the same for purposes to which an individual might apply the same; and that it was against the policy of the law to recognize any such value as an element of the aggregate value of the premises, both on the score of morality and public economy.

The Court sustained the objection, ruled out the evidence, and the defendants excepted.

The Court then charged the jury, who returned a verdict that the land was worth $125,000, and the Court upon the verdict adjudged the said land to be worth $125,000.

Defendants and intervenors appeal.

*E. L. Goold,* for Appellant Throckmorton.

1. The proceeding is *stricti juris.*   (Dwarris on Statutes, 77 ; 1 Johns. 191 ; 7 Id. 75 ; 2 N. J., 356, 396 ; 7 Munroe, 218 ; 8

Gill. 150; 4 Cow. & Hill. 180.) Jurisdictional facts must be proven. (Note to 3 Johns Cases, 108.) The Seventh District Court is *quoad hoc* a Court of inferior jurisdiction. (*Cohen's case*, 5 Cal. 210.) The jurisdictional facts may be denied, and then they must be proven before the cause can proceed. (*Beckett* v. *Selover*, 7 Cal. 236; *Irwin* v. *Scriber*, 18 Id.)

The impossibility of coming to an agreement is a jurisdictional fact, without which the powers of the Court cannot be set in motion.

The Court must know there can be no convention before proceedings *in invitum* will be permitted. The presence of the contract makes the legal proceeding impossible; for Government wants a statutory contract on the assumption of the absence of a conventional contract. Primary mode is convention; secondary mode is condemnation. (*Van Horn's Lessee*, 2 Dallas, 213.)

The object of a jury is to fix a price for the parties. But when they have fixed a price for themselves, the calling of a jury is a vain thing. The very foundation of the proceeding is a disagreement in price. (3 Johns. 108.)

The pleadings set forth a contract for the sale of the land. The Government can to-morrow, should Throckmorton attempt to dispose of the land, enjoin him in Chancery and enforce a specific performance. Why, if he is bound to convey, should the Courts be occupied with the transaction unless he refuse to convey?

The truth is, the contract overshadows all this proceeding, and it must be removed, cancelled. That can be done: 1st, by agreement between the parties; 2d, by suit, if any deception can be shown.

The plaintiff says no man shall dispute his allegations. Then why are we notified to appear?

If a man find his estate advertised under the eminent domain, and himself published as a minor, shall he not be permitted to deny the charge of minority? If not, then he cannot be heard at all, for if he cannot traverse the allegation he must stand as a minor. If he be charged to be unknown, then on presenting himself he will be told his obscurity is not an issuable fact, and he must remain unknown or a nonresident.

1st. Congress may abolish the law. 2d. The President or Sec-

retary of War may countermand the order and Gilmer refuse obedience. If the facts be not traversable, then the law might as well have read: " Whenever an authorized agent prays for a jury, it shall be empanelled," etc. What objection to the purchase could a citizen make ? He could not object to the eminent domain in the abstract. No counsel would appear for him. He must object to the absence of the necessary preliminary requisites, or not at all. The sovereign here speaks through the Legislature. That sovereign is the people, and they have chosen to put limits upon the exercise of their sovereignty.

The predicament has not arisen, for the pleadings show the owner is : 1st, a resident; 2d, capable of conveying; 3d, willing to convey and never has refused. The Secretary of War had power to contract. The legal presumption is the President directs it. (6 Cal. 82 ; 1 Rob. 427 : 7 Pet. 14; Opinion of Attorney General, 5-643, 1-625.)

The United States in making contracts is like any other litigant. (*United States* v. *Bank of Metropolis,* 15 Pet. 392.)

*Gregory Yale,* for Respondent Ricketson, argued the case orally.

*Calhoun Benham,* for Respondent.

I. The demurrer to the answers was well taken.

The answers traverse the allegations in the application of a desire to purchase, a disagreement in price, and a refusal to convey. These traverses were demurred to on the ground that the allegations to which they apply were in their nature not traversable—the desire to purchase, the disagreement in price, and the refusal to convey being facts merely preliminary to the issue of the order of notice, required to be made to appear by the application only, and needing no other proof—not even a *jurat* to the application.

The act provides that " Whenever it shall be made to appear   *   *   *   upon the application of any authorized agent of the United States, that the said United States are desirous of purchasing any tract of land   *   *   and that the owners   *   *   from disagree-

ment in price    *    *    refuse to convey said lands to the United States, it shall be the duty of the Judge    *    *    to order notice of the said application to be published," etc.    (Sec. 1.)

The obvious meaning of this is, that when these facts appear by the application, the notice shall be ordered.    This view is strengthened by the fact that the statute contemplates that the order shall be given *ex parte;* it does not require the application to be sworn to, nor any showing to be made, and it gives no one any opportunity to appear to contest any allegation until the return-day of the notice.

The act provides that the notice shall require all persons interested in said lands to come forward, on a day to be specified in said notice, and file their objections, if any they should have, to the proposed purchase.    Until that day no one has his day in Court; the proceeding being special and governed by the act, which gives no day in Court prior to the return-day.

On the return-day it is too late to controvert these facts.    The allegation of them has then served its purpose—it has obtained the order of notice and is *functus officio*.    The pleader must direct himself on the return-day to other matters—to matters of substance, and to those, indeed, pointed out by the statute as subject to his objections.    He is authorized to file objections to the proposed purchase—to the acquisition of the land by the proceedings then afoot by the application.    It would be no objection to the condemnation of the land to say that the United States did not desire to purchase, had had no disagreement about price, had met no refusal to convey.    It were folly to say to a man who takes the only step to purchase, " You don't wish to purchase."    Equally so to say " You have never disagreed about a price," when his very act in taking steps to purchase is inconsistent with an agreement, and everything but a disagreement; so also to say, " I refuse to convey now, because I did not refuse heretofore."

II.    The pretended purchase by the United States is irrelevant. The State of California is the actor in this proceeding, and there is no privity between her, or her representative Gilmer, and Throckmorton, so far as the pretended purchase is concerned.    The United States is no party to the proceeding.

This Court has decided that the State is the actor in this proceeding; that it is the right of the eminent domain of the State which is being exercised; that Gilmer is her agent, and that the deed contemplated by the statute, though made to the United States, is in effect to her. (*Gilmer* v. *Lime Point*, 18 Cal.)

If the State is the actor here, there can be no doubt, as a corollary, that the plea of a purchase by the United States is irrelevant, and constitutes no objection to the proceeding. The State can take all the property within her limits by virtue of the eminent domain, regardless of liens and incumbrances; regardless who is the owner, what rights exist in it, or what obligations are owing concerning it. She takes it at its present intrinsic value—cutting off all hope of prospective speculative value—extinguishing, so far as they affect her, all unwise or unfortunate bargains others may have made concerning it.

In this case the State says to the owner: I want your land for my purposes; it may be the United States have contracted with you for the purchase of it, but that is nothing to me; if you had consummated the sale and it belonged to the United States, I would take it if I wanted it. (5 McLean, 517.) Nor can I be governed by the price you and the United States fixed upon it, if you did fix upon a price. I will give its intrinsic value. And this is not unjust. It is but another way to arrive at what is according to the dictate of equity. If the United States were actors here, and the supposed contract pleaded and allowed as a shield, it would not be conclusive as to price, (and that is the only point for which it is used) assailed as it is in advance by the allegation in the application, that in that respect the contract is hard and unconscionable, and cannot and ought not to be enforced in a Court of Equity.

But this is not a suit in equity, and even if the United States were the actors, such objection or defense as the supposed contract and the equities arising from it could not be interposed. The proceeding is special and anomalous.

III. The pretended contract between Throckmorton and the United States, when offered as evidence to prove the value of the tract, was properly ruled out. It was irrelevant—it did not tend to prove the value. The price fixed by it was a mere opinion. How sound or unsound it might be, it furnishes no data to show.

5

IV.   Evidence as to the value of the premises as a site for fortification was properly ruled out, for the reasons stated in the objection to such evidence.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

We take a different view of this case from that of the Court below.   These proceedings for the condemnation of land are to be regarded as those of a special inquisition, and though taken under the Act of 1859, by the District Court or Judge, yet are to be construed, not by the general rules applicable to Courts of general jurisdiction, but as the acts of a Court which sits in this matter under a special statutory authority.

We have held that the Act of 1859 is constitutional.   The condemnation of the land can only be made in pursuance of the provisions of the statute, the title coming to the United States through a compliance with its requirements.   Though the State possessed the power to declare that the land should be taken for public uses upon other and different terms and conditions than those set out in the act, it is enough to say that it has prescribed the particular conditions given in the statute, and that these must be followed before a title can vest.

The act provides that whenever it shall be made to appear upon the application of any authorized agent of the United States, that the United States are desirous of purchasing any tract of land for the particular purposes specified in the Act, and that the owners, from disagreement in price, etc., refuse to convey said lands to the United States, it shall be the duty of the Judge to give notice, etc., and it is provided that the parties may come in and contest with the United States the purchase.

We think that this act does not give an unqualified right to the United States to cause this forced sale, or to condemn the land, but only a right qualified by the existence of the particular fact recited, to wit: In this case, by the disagreement between the United States and the owners as to the price.   The process of taking land from the citizen without his consent is a harsh measure of governmental necessity, and the Legislature evidently designed that it

Gilmer *v.* Lime Point.

should only be exercised when other and more usual means have been sought to obtain the property on fair terms, and these have failed. If the parties are willing to sell, the land cannot be condemned if the Government is willing to give what is asked. The Government must have first sought to buy the land before it can be seized. There can be no disagreement until the Government indicates its will or willingness to purchase on some specific terms; it must offer to buy for a stated price, and if the owner declines the offer, then the Government has its remedy. Here the defendant sets up, that not only was there no disagreement as to the price, but the Government agreed with him as to the price, and contracted to purchase at that price. If this be true, the whole foundation of the proceeding falls. This principle is not only supported by the reason of the thing, but it has the express sanction of a decision of the Supreme Court of New York upon a statute of that State, similar in its language, applicable to turnpike corporations. (See *Gilbert* v. *Columbia T. R. Co.*, 3 Johns Cases, 108.) The Court say : " This is the case of a special power granted by statute, and affecting the property of individuals, which ought to be strictly pursued, and appear to be pursued on the face of the proceedings. (4 Burr, 2244, Comp. 26 ; 1 Burr, 387 ; 7 Term Rep. 363.) This is an established rule, and it is important that it should be maintained, especially in cases which so materially interfere with private rights. It does not appear that any disagreement existed between the parties, or that, in consequence of any disagreement, the company applied to a Judge, both of which were requisite to authorize the appointment of Commissioners. The disagreement and consequent application were the foundation of the whole proceedings, and without them the Judge could have no jurisdiction in the case. As they do not appear, we are not to intend they existed."

The argument of the attorney of the United States is, that by the true construction of the Act of 1859, the application of petitioner need only state these facts *in limine* to authorize the Judge below to act in giving notice, and that no proof of these facts is required, nor are they traversable. We think differently. The first section does not in its language require such construction. It merely states what the contents of the petition or application shall.

Gilmer v. Lime Point.

be to authorize these initiatory proceedings; but it does not limit the force or use of the averments to the mere purpose of a statement. The first order *determines* nothing, but the parties are summoned to contest the purchase, etc., and this involves a right to contest the averments of the pleading which set up a right to condemn the land.

If such construction as that insisted on be given, the result would be, that if the land of one averred to be a minor, or person under disability to contract, were sought to be condemned, he could not show that he was not under disability, nor, probably, could a defendant show that the person starting the proceeding was not an agent of the United States, or that the United States had already bought the land under a valid executory agreement.

Such statutes are in derogation of the general right of the citizen and of common law modes of procedure, and are to be strictly construed. We held this in *Mountain Lake Company* v. *Bensley*, 13 Cal. See also 4 Hill, 76; 7 Id. 9; 4 Pet. 162, and the numerous cases cited in note to 3 Johns Cases, *supra.*

There is nothing in the other errors assigned—as to refusal to permit proof of the contract to establish the value of the land, or rejecting proof of value of the land to the Government as a fort.

The judgment of the Court, condemning the land, is reversed; and the Court below will proceed to retry the case upon the matter of the demurrer and answer, setting up this contract with the Government, and this denial of any disagreement in price.

These matters constitute separate issues, and are wholly independent of any question of the value of the land.

If they should be found for the Government, then it will be time enough to decide whether the verdict assessing the value should be disturbed. As the question has not been argued, we decline expressing any opinion upon it.

Judgment of condemnation reversed and cause remanded for further proceedings in pursuance of the principles of this opinion.