# CONTRA COSTA COAL MINES RAILROAD COMPANY v. J. MORA MOSS et al., DEFENDANTS, AND MOUNT DIABLO RAILROAD COMPANY, INTERVENORS.

THE petition asking the Court to condemn land for railroad purposes under the Railroad Law of this State, in order to give the Court jurisdiction, should aver that petitioners have endeavored to contract for the land, sought to be acquired for the use of the railroad, and that they cannot contract for the purchase thereof.

The Court has full power to grant leave to amend such petition, whenever it shall be of opinion that justice may require it.

The question whether that clause of the Constitution prohibiting private property from being taken for public use without a just compensation, authorizes the Legislature to confer upon railroad companies the power of taking land from the owners upon the payment of a just compensation, has been fully put at rest, and the right and power firmly established by numerous decisions.

The question of the public character of railroads, and their necessity for public use, is one that partakes more of a political than a judicial character, and rests

Contra Costa Railroad Co. v. Moss.

much, if not entirely, in the sound discretion of the Legislature; and when the political department of the Government has recognized the public character and necessity for public use of any particular proposed railroad, Courts will rarely, if ever, in a proceeding to condemn lands, investigate and determine this preliminary question.

Under the general Railroad Law, all railroads are compelled to act as common carriers for the conveyance of all passengers and property that may come to their road for that purpose.

The Courts are not authorized to condemn lands for railroad purposes, unless it is shown by evidence that the petitioners have endeavored to contract for the purchase of the same, but have been unable to do so.

The general Railroad Law has not given to any company organized under it, the right to condemn or use any lands owned or previously located and appropriated for railroad purposes by another railroad company, except where it may be necessary for one railroad to cross another. Land once located by a company, who are proceeding in good faith and with reasonable diligence in the construction of their road, cannot be taken from it and appropriated by another company.

APPEAL from the District Court, Fourth Judicial District, Contra Costa County.

Ths facts are stated in the opinion of the Court.

*John B. Felton* and *J. W. Stephenson*, for Defendants and Intervenors, Appellants.

*Pratt & Clarke*, for Respondents.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. and NORTON, J. concurring.

This is a proceeding under the general Railroad Law of this State to condemn land for railroad purposes. The defendants appeared and filed a demurrer to the petition of the railroad company, setting up various grounds. The Court sustained the demurrer and allowed the plaintiffs to amend their petition; and the granting leave to amend is now assigned as error. The principal grounds of the demurrer were, that the petition did not state that the land sought to be acquired was necessary for the purposes of the company; and that it did not show that the company could not contract for the purchase of the land. It is insisted that these averments were essential to give the Court jurisdiction of the proceedings; that the Court had no power to allow the plaintiffs to amend their

Contra Costa Railroad Co. *v.* Moss.

petition ; and that the Court could not acquire jurisdiction by the amended petition ; and that it was the duty of the Court, upon sustaining the demurrer, to dismiss the proceeding.    Sec. 23d of the general Railroad Law of 1861, under which these proceedings were prosecuted, contains this provision : " If such company cannot contract for the purchase of any real estate, or any right, title, or interest therein, necessary for any of the purposes aforesaid, from the person or persons owning the same, then such company may acquire the same, for the purposes in this section expressed, by means of the special proceedings prescribed in this act."    Under a clause of the same character, though differently worded, it was held, by this Court, that the person applying for a condemnation must have first sought and failed to buy the land from the owner. ( *Gilmer* v. *Lime Point,* 19 Cal. 47.)    The Legislature of 1863 (Stat. 1863, 613) so amended Sec. 23 of the general Railroad Law as no longer to make this inability to contract a condition or ground of jurisdiction in proceedings to condemn land.    The power of the Legislature to declare the terms and conditions upon which such proceeding might be instituted, was fully sustained in that case.

Sec. 33 of the general Railroad Law contains this provision : " The said Court or Judge may make all such orders as may be necessary or proper in the special proceedings provided for in this act, and shall cause the pleadings and proceeding to be amended whenever justice shall require it to be done, and shall direct the manner of the service of all orders and notices not herein specially provided for."    It is clear that the Court had full power, under this provision, to grant leave to the plaintiffs to amend ther petition. The mere fact that the matters to be amended related to the jurisdiction of the Court over the proceedings can make no difference. The power to cause amendments to be made is granted in general terms, unqualified by anything which would justify the Court in refusing leave to amend in the matters objected to in this case. This point is therefore overruled.

It is next objected that the corporation, plaintiffs in this case, are a private company, incorporated for the advancement of their own private enterprise of coal mining, and not as common carriers for

the public convenience; and it is therefore urged that they have no right to condemn the land in question, and that the Legislature has no power to authorize them to take private property for such uses. The Constitution contains this provision: " Nor shall private property be taken for public use without just compensation." It is clear that the Legislature has no power to take the property of one person and give it to another, nor have they the power to compel one person to part with his property for the mere private use or benefit of another. It is equally true that they have the right to take private property for public use, upon paying a just compensation. At the commencement of the construction of railroads in the United States, where these constitutional provisions exist, one question much discussed was, whether the use of land for railroad purposes was a " public use " within those terms as used in the various State Constitutions, so that the Legislature would be authorized to confer upon railroad companies the power of taking the land from the owners, upon the payment of a just compensation, in the mode prescribed by the various railroad charters. It is unnecessary to refer to the arguments used during this discussion; for the question has been fully put at rest, and the right and power firmly established by numerous decisions. Nor do the counsel for the appellants question the general result of these decisions. They, however, contend that the railroad the plaintiffs are about constructing is not of such a character as entitles them to take the private property of other persons for its use or construction.

On the twenty-ninth day of April, 1861, (Stat. 1861, 264), the Legislature passed a law granting the railroad franchise in question to William Fitzpatrick and others, who were required therein to organize themselves, their associates and assigns, into a corporation under the Railroad Corporation Law. It granted to them the right of way over the lands of the State, and authority to construct and maintain a railroad, with the necessary branches, from the coal mines in Contra Costa County, through what is known as " Kirker's Pass," to some point on the San Joaquin River or Suisun Bay that would admit of the delivery of the road freight directly into the vessels employed in its water transportation, and the right to construct a wharf at such termination; with power to

Contra Costa Railroad Co. *v.* Moss.

collect such tolls and wharfage as might be allowed by the Board of Supervisors of Contra Costa County. In pursuance of this statute, the plaintiffs were organized as a railroad corporation under the general Railroad Law of 1861; and they by that, assumed, and are bound to perform all the duties and obligations imposed upon and required of other railroad corporations organized in this State. The necessity of the plaintiffs' railroad for public use is not only as fully established as that of any other railroad built by a corporation organized under the general Railroad Law, but its public character has received a special recognition by the passage of the special law above referred to. If the inquiry, whether the road is of " public use," can be gone into in the present case, it can in that of every railroad which may hereafter be constructed in the State; and in every proceeding to condemn land, the Courts could be called upon to investigate and determine this preliminary question. The question is one that partakes more of a political than a judicial character. It therefore rests much, if not entirely, in the sound discretion of the Legislature. (*Gilmer* v. *Lime Point*, 18 Cal. 251, 252.) It is their duty to define what kind of railroads shall be deemed of such a public character as to entitle them to take private property for the use of the road. There may possibly occur cases in which it might be the duty of the Courts to interfere to prevent the rights of private ownership of property from being invaded, under the pretense of an appropriation for public use ; but we do not deem the present a case of that kind.

It is objected that the Act of 1861 does not make it obligatory upon a company formed under it to act as a common carrier for the expeditious conveyance of passengers and property, or make it a condition that the railroad shall be constructed between points of commercial importance, so that they can be used by the public as common carriers. And it is urged that the plaintiffs are constructing a railroad from a coal mine in the mountains through a desolate region to navigable waters, to enable it to get coal ready to market; that this is a mere private use; and therefore they have no right to appropriate the property of others to its purposes without their consent. The forty-fifth section of the general Railroad Law of 1861 provides that, " Every such company shall start and

run their cars for the transportation of persons and property, at such regular times as they shall fix by public notice, and shall furnish sufficient accomodations for the transportation of all such passengers and property as shall, within a reasonable time previous thereto, offer, or be offered, for transportation, at the place of starting, and the junction of other railroads, and at siding and stopping places, established for receiving and discharging way passengers and freight; and shall take, transport, and discharge such passengers and property at, from, and to such places, on the due payment of tolls, freight, or fare therefor." And Sec. 46 provides that, " in case of refusal by such company or their agents so to take and transport any passengers or property, or to deliver the same at the regular appointed places, such company shall pay to the party aggrieved all damages which shall be sustained thereby, with costs of suit." The plaintiffs, in common with other railroad companies organized under this act, are bound by these provisions, which makes it obligatory upon them to act as common carriers for the convey- ance of all passengers and property that may come to their road for that purpose. The fact that their road does not connect points of present commercial importance cannot affect the rights of the plaint- iffs. Railroads often make commercial points by their construction, and a large and cheap supply of coal brought to a point connected with water navigation, is one of the great necessities of the State, and a matter in which the whole State is interested. If we were to enter into an investigation to determine what point were of suffi- cient " commercial importance " to justify the construction of rail- roads, we would find ourselves engaged in a difficult field, with very little to guide us.

The plaintiffs, by their amended petition, allege that they have endeavored to contract with the parties claiming the land sought to be acquired for the use of the railroad; and that they cannot con- tract for the purchase thereof; which averment is denied by the defendants in their answer filed to the amended petition. At the trial, the plaintiffs called one Cutter, as a witness, to prove this averment; who merely testified that, as agent of the company, he had endeavored to contract with one of the defendants, Pioche, for that portion included in the " New York Rancho," but showing no

attempt to contract with any other of the defendants.    The defendants contend that the proof was insufficient to sustain the allegation of the amended petition upon this point, or to show that the plaintiffs were entitled, under the law, to institute these proceedings to condemn the land.    On the other hand, the plaintiffs insist that the averment was unnecessary and immaterial, and therefore not necessary to be proved; because Sec. 24 of the general Railroad Law prescribes what the petition shall set forth; and this averment is not among them.    Although this averment is not, apparently, required by Sec. 24, yet it is clear that the right of the plaintiffs to institute these special proceedings depends, under Sec. 23 as it stood before the amendment of 1863, upon the fact that they could not contract for the purchase of the land sought to be condemned.    It was necessary, therefore, to aver and prove this fact, to give the Court jurisdiction of the case.    There was no evidence of any attempt to contract with any of the defendants except Pioche; and the Court therefore had no authority to take any action in the case except against him.    (*Gilmer* v. *Lime Point,* 19 Cal. 47 ; *Gilbert* v. *Columbia T. Co.,* 3 Johns. Cas. 107 ; *Adams* v. *Saratoga & Wash. R. R. Co.,* 10 N. Y. 328.)

It appears that Cutter, the witness who testified upon this matter, was one of the stockholders of the corporation plaintiff, and the defendants objected to his testifying, on that ground ; but the Court overruled the objection, and this is assigned as error.    It has been settled by several decisions of this Court, that stockholders of a corporation are not competent witnesses on behalf of the corporation. (*Mokelumne Hill Canal Co.* v. *Woodbury,* 14 Cal. 265 ; *McAuley* v. *York Mining Co.,* 6 Id. 80 ; *Wolf* v. *St. Louis Independent Water Co.,* 15 Id. 319.)    It is unnecessary to determine whether the witness was admissible under Sec. 422 of the Practice Act, as amended in 1861, as no notice of the intention to examine him was given, as required by that act.    The Court therefore erred in overruling the defendants' objection to this witness.

While these proceedings were pending in the District Court, the " Mount Diablo Railroad Company " filed their petition of intervention, averring that they were duly organized as a corporation on the thirteenth day of July, 1861, under the general Railroad Law of

22

that year, for the purpose of constructing a railroad from the San Joaquin River, at a place known as New York, to the coal mines in the hills back of that place; that they had located their line and filed a map thereof in the County Recorder's office on the thirteenth day of July, 1861; that they hold and own a certain strip of land over which their railroad is located, and which is necessary for the use of their road, describing it; that the greater part of the route proposed by the plaintiffs for their railroad is within and a part of the tract thus acquired by them for the purposes of its said road; and that the acquisition of the land set forth in plaintiff's petition, would interfere with and destroy the line of road laid out by them.    It seems that there is a narrow pass, known as "Kirker's Pass," through which both of the lines of these two railroad companies are located, and it is difficult if not impossible for strips of land of the width prescribed by the Railroad Act to be located in this pass, so as that both roads could be constructed therein, without interfering with or running over a portion of the same land located by both companies.    The general Railroad Law of this State has conferred no exclusive right upon any company organized under it to construct its road between any points in the State.    Nor has it given to any company the right to condemn or use any lands owned or previously located and appropriated by another railroad company, except where it may be necessary for one railroad to cross another. Thus it is clear that one railroad company cannot locate its line along or upon the previously located line of another company, nor can it condemn or appropriate land along or upon the previously located line of another railroad company, except, as before stated, where it may be necessary for one railroad to cross another.    Land once located by a company, who are proceeding, in good faith and with reasonable diligence, in the construction of their road, cannot be taken from it under these proceedings, and appropriated by another company for railroad purposes.    By its priority of location and appropriation, the first company locating its line acquires a vested right to its line of road, and the land necessary for its construction, as prescribed by the Railroad Law, of which it cannot be divested by another company who seek to appropriate the land to the same use.    The next question is, which of these two companies

first located their line of railroad in this narrow pass, or at any other place where they interfere with each other ? This question we are unable to determine from the record before us ; and as the case will have to go back for a new trial, it can be determined by the Court below upon such evidence as may be brought before it, in accordance with the principles laid down in this opinion.

The order of the Court below, appointing Commissioners to ascertain and assess the compensation to be paid for the land sought to be appropriated by the plaintiffs, is set aside and reversed, and the case is remanded for a new trial.