THE ROCHESTER, HORNELLSVILLE AND LACKA-WANNA RAILROAD COMPANY, APPELLANT, *v* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY AND FRANCIS G. BABCOCK, RESPONDENTS.

*Right of a railroad company to locate its route — when its act in so doing is not subject to review by the courts — 1850, chap 140, secs. 18, 22 — a person or corporation attempting to hinder or delay it from constructing its road will be enjoined from so doing,*

When a corporation, organized in compliance with the provisions of the general railroad act (1850, chap 140), has made a map and profile of the route intended to be adopted by the company and has caused the same to be duly certified and filed as required by section 22 of the said act, it has acquired a vested and exclusive right to build, construct and operate a railroad on the line which it has adopted, subject to the right of other railroad companies to cross its route and lands in the way and manner and for the purposes provided by law.
Although the legislature has required that the general *termini* and route must be stated in the articles of association, it has left to the company the right to locate

the route in other respects, including the precise *termini* and the intermediate points, after it has caused surveys to be made and has ascertained which is the most feasible line to adopt.   So long as the company acts in good faith and within the limits of the powers conferred upon it by the act, its exercise of the discretionary power conferred upon it by the act cannot be reviewed by the courts, except upon the application of an aggrieved person over whose land the route is located, made as provided in section 22 of the said act.

On June 9, 1886, the plaintiff was organized, under the general act of 1850, for the purpose of building and constructing a railroad, commencing in the village of Canisteo, in the county of Steuben, and terminating at a point on the line of the Lackawanna and Pittsburg Railroad Company, in the town of Burns, Alleghany county, *via* the village of Hornellsville.   The plaintiff thereafter surveyed and located its route, filed a map duly certified as required by the act, caused notices to be served on the landowners over whose lands the road was located, acquired the right of way for the greater portion of its entire line, and was in good faith proceeding with due diligence to complete and put its road in operation.   In the village of Hornellsville the route adopted by the plaintiff passed for some distance along and beside the lands of the defendant corporation upon lands which were owned in fee by the defendant Babcock, to which the plaintiff had acquired no title nor had any proceeding been instituted to condemn the same.   After the defendant corporation had been served with notice of the proposed route it took a lease from Babcock, for the period of three years, of a piece of land between its road and a brick-yard and laid a switch thereon.   The plaintiff, having caused this track to be taken up, and having laid down a section of its own track, about ninety feet in length, and placed rails thereon, commenced this action to restrain the defendants from interfering with or placing obstructions upon its road-bed, and procured therein a temporary injunction which was upon the return day dissolved.

*Held,* that as it appeared from the affidavits, and the history of the proceedings and the declarations of the agents and managers of the defendant corporation, that in taking the lease and in constructing the switch it acted maliciously and in bad faith, and for the purpose of hindering, annoying and delaying the plaintiff in the construction and completion of its road, the plaintiff was entitled to a preliminary injunction against the defendant corporation, which should be continued during the action and thereafter made permanent if the facts above stated should be proved upon the trial.

*Osborn* v. *United States Bank* (9 Wheat., 740–841): *Croton Turnpike Company* v. *Ryder* (1 Johns. Ch., 611): *T. and P. C. Railroad Company* v. *W. and V. Railroad Company* (12 Phil. R., 642); *Contracosta Railroad Company* v. *Moss* (23 Cal., 423) followed.

That the injunction was properly dissolved as to the defendant Babcock, as he was the owner in fee and entitled until the plaintiff acquired the right, by purchase or otherwise, to construct its railroad upon his land, to remain in possession thereof, and occupy, or sell or lease the same, without any restraint arising from the location of the road over the premises.

APPEAL from an order of the Monroe Special Term, dissolving an injunction restraining the defendants from placing obstructions upon the line of the plaintiff's road as located.

*Frank S. Smith*, for the appellant.

*James H. Stevens, Jr.*, for the respondent.

BARKER, J.:

The Special Term, in dissolving the injunction, held that as the plaintiff had not acquired the right of way for the purpose of constructing its road over the *locus in quo* by purchase from the owner, or by having the same condemned by proceedings instituted for that purpose under the statute, it had no right, estate or interest of which a court of equity can take cognizance and, by injunction, restrain the defendant corporation from doing the act complained of. This ruling goes to the merits of the plaintiff's case as set forth in the affidavits. This court must also, in reviewing the order appealed from, consider the legal proposition, which lies at the foundation of the controversy.

This action is, on the equity side of the court, to restrain the defendant corporation from laying down its tracks upon or across the route surveyed, located and adopted by the plaintiff, upon which to construct its road between the *termini* mentioned in its articles of incorporation. The preliminary injunctions, which the order appealed from vacated, was in terms co-extensive with the prayer for relief demanded in the complaint. The question presented is a very important one, which has not been much considered in the courts of this State, and involves the inquiry as to the nature and character of the franchises which are conferred upon railroad corporations organized under the general railroad act, and to the extent which courts of equity have jurisdiction to control the action of existing companies, when they purposely and designedly and in bad faith attempt to hinder and delay the construction of another road, which, when completed, becomes a competing line.

The plaintiff corporation was organized June 9, 1886, for the purpose of building and constructing a railroad commencing in the village of Canisteo, in the county of Steuben, and terminating

at a point in the line of the Lackawanna and Pittsburg Railroad Company, in the town of Burns in the county of Alleghany, *via* the village of Hornellsville, which is also in the said county of Steuben. The plaintiff surveyed and located its route, made and filed a map of the same, duly certified by the proper officers of the company, as required by the twenty-second section of the said act. It then caused notices to be served on the land owners over whose lands the road was located, and the line so adopted has never been changed in any proceeding instituted for that purpose, and before this action was commenced the location was confirmed by virtue of the other provisions of the said section. In the village of Hornellsville the plaintiff's route is, for some distance, along and beside the lands of the defendant corporation, upon which is located its tracks, and the *locus in quo* is upon lands of which the defendant Babcock is the owner in fee. The plaintiff has acquired the right of way for the greater portion of its entire line, and is in good faith and with due diligence proceeding to complete and put its road in operation. Adjacent to Babcock's lands, on the side opposite from the defendant's tracks, there is in operation a brick-yard, the proprietors of which are accustomed to ship a portion of the bricks made by them on the defendant's railroad at the station in Hornellsville. After the defendant was served with notice of the plaintiff's proposed route, it took a lease from Babcock, for the period of three years, of a piece of land between its road and the brick-yard. The plaintiff's road-bed, when constructed, will be on the same grade as the defendant's tracks and road-bed to a point abreast Babcock's land.

On or about the twentieth of August, the defendant constructed a switch from its tracks over Babcock's premises and across the plaintiff's line. During the night of the same day, the plaintiff caused the track so far as it was laid upon its line, to be torn up and removed and laid down a section of track about ninety feet in length and placed rails thereon, which were not connected with any of the tracks then laid upon its road bed, and procured and served an injunction restraining the defendant from interfering with or placing obstructions upon its road bed. It was disregarded, and on the same day the defendants' agents and servants tore up and removed the section of track laid by the plaintiff. The plaintiff

had not purchased the right of way over Babcock's land, nor had it instituted any proceedings under the statute for condemning the same. This action was commenced August 21, 1886. It is not a question in dispute, but what it is the intention of the plaintiff in good faith and as soon as it is practicable to complete its road and put it in operation.

We are also of the opinion that it is fairly established by the facts disclosed in the affidavits and the history of the proceedings and the declarations of the defendant's agents and managers that its action in taking the lease from Babcock and in constructing the switch was malicious and in bad faith and for the purpose of hindering, annoying and delaying the plaintiff in the completion of its road. Of course this expression of our opinion as to the defendant's motives is upon the case as now presented and will be no guide for the court when the case is tried upon the merits, and the facts must then be determined upon the evidence presented. If we are correct in our conclusions as to the facts which we considered fairly established by the affidavits, we think the plaintiff made a case for the allowance of the preliminary injunction and that the same should be continued *pendente lite.*

Under the general railroad act when a corporation has been organized in compliance with the conditions of the statute and has made a map and profile of the route intended to be adopted by the company, duly certified and filed as required by the twenty-second section it has acquired a vested and exclusive right to build, construct and operate a railroad on the line which it has adopted, subject to the right of other railroad companies to cross its route and lands in the way and manner and for the purposes provided by law. The general *termini* and route must be stated in the articles of association, but the location in other respects including the precise *termini* and the intermediate points, the legislature has left to the election of the company ; after it has surveyed and ascertained which is the most feasible line; the exercise of its discretion when it acts in good faith and within the limits of the powers conferred upon it, cannot be reviewed by the courts only on the application of an aggrieved person, over whose lands the road is located as provided in the said section twenty-two. In this case Babcock petitioned for a change of the route but his application

was defeated. The plaintiff has a franchise conferred upon it by the legislature to construct its road over the established line.

The first and important inquiry is, has the defendant invaded this franchise secured to the plaintiff, in such a manner and to such an extent, as to confer upon a court of equity jurisdiction of the subject matter and justify the granting of a preliminary injunction restraining the defendant from carrying into execution during the pendency of the suit, its declared purpose to hinder and delay the plaintiff in the construction of its road and the enjoyment of its franchises. The general rule is established by the decisions of courts of equity jurisdiction that an injunction will be granted, securing to persons and corporations the enjoyment of a statutory privilege of which the complaining party is in the actual possession, unless the right is doubtful; if the right plainly exists and has been invaded, the proper and specific remedy, that which will prevent a continuance of the invasion, is by injunction, and this can be decreed only in equity.

We think the plaintiff has made a case against the defendant corporation which comes within this rule, the facts are not left in doubt, nor are they complicated. The plaintiff's rights depend upon the construction of the statute under which it was organized , that the plaintiff's franchise is exclusive so far as the right to construct a railroad on the line which it has adopted must be conceded, as another road cannot be constructed and operated on the same location, although the statute has not declared in express terms that the privilege is an exclusive one, it would lead to endless contention and disastrous disturbance to hold otherwise and give the statute a different construction. In *Osborn* v. *United States Bank* (9 Wheat., 740–841), the court, in speaking of the powers of a court of equity in this class of cases, remarked: " The interference of the court in this class of cases, has most frequently been to restrain a person from violating an exclusive privilege by participating in it. But if, instead of a continued participation of the privilege, the attempt be to disable a party from using it, is not the reason for the interference of the court rather strengthened than weakened ?"

In *Croton Turnpike Company* v. *Rider* (1 Johns Ch., 611), the chancellor, after stating that the defendant's action was a material and mischievious disturbance of the plaintiff's franchise

granted to it by the Legislature for public purposes, declared the jurisdiction of the court over the case to be complete, and added : " It is settled that an injunction is the proper remedy to secure to a party the enjoyment of a statute privilege, of which he is in the actual possession, and when his legal title is not put in doubt. The English books are full of cases arising under this head of equity jurisdiction. * * * The equity jurisdiction in such a case is extremely benign and salutary. Without it the party would be exposed to constant and ruinous litigation, as well as to have his right excessively impaired by frauds and evasion."

Most of the writers on the subject of equity jurisprudence assert jurisdiction in this class of cases. (Story Eq., § 927 ; *Livingston* v. *Van Ingen,* 9 Johns., 507 ; *Tyack* v. *Brumley,* 1 Barb. Ch., 519 ; *Boston and Lowell R. R. Co.* v. *Salem and Lowell R. R. Co.*, 2 Gray 1 ; High on Injunction, chap. 15, § 897 ; *Plank-road* v. *Douglas,* 12 Barb., 553 ; *Livingston* v. *Ogden,* 4 Johns. Ch. 48.)

A franchise is a branch of the sovereign power of the State, subsisting in a person or a corporation by a grant from the State. So long as the privilege bestowed on the grantee continues to exist, all other persons and corporations are, under the most solemn obligation as a duty which they owe the public, to observe the franchise and forbear from interfering with its enjoyment. All franchises are supposed to be for the public good. If the State was engaged in constructing a railroad on the route in question, in pursuance of a legislative enactment, no one would doubt but that the State could invoke the protection of the courts by restraining all persons from interfering with its purpose. We think the plaintiff, in its charter and the provisions of the statute authorizing its creation, may invoke the same degree of protection from this court. In some of the other States the question now before us has been considered and passed upon, and the decisions of these courts may be cited in support of the opinion which we entertained. In *T. and P. C. Railroad Company* v. *W. and V. Railroad Company* (12 Phil. R., 642) application was made by the plaintiff for a preliminary injunction restraining the defendant from constructing its road upon and along the line which the plaintiff had previously adopted or from interfering with such located line. The injunction was granted, the court being of the opinion that the plaintiff's line

was first located in the manner required by the statute of that State, and that the defendant's action was an invasion and interference with the plaintiff's franchise. The remarks of the court as to the plaintiff's privileges are so pertinent to the case before us that we quote them in this connection: "Clearly, when a railroad company has ascertained and located where its road shall be, it is not competent for another company to step in and take its route, agreeing with the owners, and occupy the land. The selection and location of the route secures the title of the first company to that route, which it may carry to completion without disturbance by another."

In the case of *Contracosta Railroad Company* v. *Moss* (23 Cal., 323) the same question was considered, and the court there remarked: "It is clear that one railroad company cannot locate its line along or upon the previously located line of another company, nor can it condemn or appropriate land along or upon the previously located line of another railroad company, except as before stated when it may be necessary for one railroad to cross another. Land once located by a company who are proceeding in good faith and with reasonable diligence in the construction of their road, cannot be taken from it under these proceedings and appropriated by another company for railroad purposes. By its priority of location and appropriation, the first company locating its line acquires a vested right to its line of road and the land necessary for its construction, as prescribed by the Railroad Law, of which it cannot be divested by another company who seek to appropriate the land to the same use."

If the defendant is permitted to carry out its threats to construct and to keep down its tracks over the plaintiff's route, it is obvious that it will be a serious invasion of the plaintiff's franchise and will tend to interfere with the construction of its road and embarrass it in acquiring the right of way over Babcock's land. It is equally clear that the plaintiff is in the possession of a franchise granted to it by the State, and that its right to the enjoyment of the same is clear and beyond all doubt. It possesses the franchise or power under the law to acquire the right of way by purchase or condemnation, and the defendant's past action and threatened action must necessarily tend to embarass the plaintiff in securing the right to

· 214   R., H. & L. R. R. CO. *v.* N. Y., L. E. & W. R. R. CO.

FIFTH DEPARTMENT, MARCH TERM, 1887.

construct and operate its road over the land owned by Babcock.   The court is warranted in reaching the conclusion, that as matter of fact, Babcock and the defendant have conspired to hinder and delay the operations of the plaintiff.   The purpose of the general railroad act is to favor and facilitate the construction of railroads for public convenience and use, and an existing railroad corporation whose franchises and privileges are based upon the same *statute*, should not be tolerated in the least in any action, movement or purpose · to defeat or delay the construction of other railroads.   Every attempt to do so should be promptly met and condemned, and the proper process in an appropriate case should be unhesitatingly granted for the protection of an aggrieved party.

As to the defendant Babcock, the injunction was properly dissolved, as he was owner in fee of the land, and until the plaintiff acquired the right by purchase or otherwise to construct its railroad upon his land, he rightfully remained in possession of the same, and could use and occupy or sell or lease the same without any restraint arising from the location of the road over the premises.

The case of the *Corporation of New York* v. *Mapes* (6 Johns. Ch., 46), cited in the opinion of the learned judge who presided at the Special Term, is in point in sustaining the dissolution of the injunction as to Babcock, but is not, as we can see, an authority vindicating the action of the defendant corporation.

So much of the order as vacates the injunction against the New York, Lake Erie and Western Railroad Company is reversed, with ten dollars costs and disbursements to be paid by that company to the plaintiff, and the rest of the order is affirmed, with ten dollars costs and disbursements to be paid by the appellant to the respondent Babcock.

HAIGHT J., concurred; SMITH, P. J., and BRADLEY, J., not sitting.

So ordered.