KANSAS & TEXAS COAL RAILWAY, Plaintiff in Error, v. NORTHWESTERN COAL & MINING COM-PANY et al.

In Banc, March 26, 1901.

1. **Railroad Company:** RIGHT TO CONDEMN LAND: COLLATERAL PROCEED-ING. The power of a regularly organized and chartered railroad company, chartered for "the purpose of constructing and operating a railroad for public use in the conveyance of persons or property," to condemn land for a right of way for a railroad track, can not be drawn in question in a condemnation proceeding. Nor can it be shown in such proceeding, which is a collateral one, that a company chartered for such a purpose, has the same directors and stockholders as a private business corporation, and that its proposed right of way is to be used solely in the interest of such private business (in this case, coal mining), nor that the private company furnished the

Kan. & Tex. Coal R'y v. Northwestern Coal & Mining Co.

money with which the railroad is to be constructed. No evidence to show such facts is competent, except in a direct proceeding to attack its charter.

2. ———: STOCKHOLDERS: PRIVATE COMPANY. There is nothing in the spirit or letter or policy of the law which prohibits the same persons from forming and conducting two different corporations, one a private business corporation and the other a railroad company.

3. ———: PUBLIC USE. The use of land for railroad tracks is a public use. And the fact that almost the entire volume of business the railroad company is expected to do, is the transportation of the products of one private business company, whose stockholders are the same as those of the railroad company, does not make the use to which the land sought to be condemned is to be applied any the less a railroad right of way, and therefore a public use. Under the laws of this State the company can be compelled to carry other freight and passengers.

4. ———: OTHER REMEDIES NOT EXCLUSIVE. The statute which gives a private business concern the right to construct a railway track over land owned by it and compelling a near-by railroad to grant it switch connections, and the other statute authorizing a private business company, such as a coal mining company, to invoke the aid of the county court in the condemnation of a tramway for its use, are not exclusive remedies, and do not take from a regularly chartered railroad company its power of eminent domain.

5. ———: RIGHT OF WAY: LOCATION: COURTS. The courts have no authority to designate what particular land a railroad company shall or shall not condemn for the use of its tracks. They can not interfere even though the proposed right of way extends parallel and within seven feet of the center of the private railroad track of a private business corporation, nor even though the proposed railroad track is to be used principally for the business of a rival private business company. The Legislature has lodged with a railroad company the power of determining what land is necessary for their use, except limitations as to width of right of way, etc.

6. ———: EMINENT DOMAIN: LANDS OF PRIVATE CORPORATIONS. The statute (sec. 2741, R. S. 1889) exempting the land held by corporations from condemnation for a railroad track, does not mean the land of corporations organized for private gain. The statute means

Vol 161 mo—19

that land can not be taken from one corporation by another corporation, to be used for the same purpose in the same manner that it was used by the corporation that first appropriated it to such use and purpose.

PER VALLIANT, J., DISSENTING.

**Private Corporations:** RIVALS: EMINENT DOMAIN. A coal company can not assume the character of a railroad company for its own use and exercise the right of eminent domain for the sole purpose of closing out its rival in business and preventing such rival from bringing its coal to market. The courts ought not to permit it to organize itself into a railroad company for the purpose of condemning a right of way for its railroad track along and over the private track of a rival private company. Nor should the courts in such case be concluded by the charter of the railroad company which is in fact the *alter ego* of the coal company, but should exercise the authority to inquire, when the condemnation proceeding is brought, whether or not the proposed use of the land, is a public use, or in fact a mere private use. The charter in one case does not make the use of the land a public use, nor the lack of the charter by the private corporation make a like use by it a private use. The courts are not mere ministerial bodies to be hedged about by a formal charter, with no judicial discretion to inquire into the use to which a private corporation, transformed by a charter into a railroad company, purposes to appropriate the land.

Error to Macon Circuit Court.—*Hon. N. M. Shelton,* Judge.

REVERSED AND REMANDED *(with directions).*

*Adiel Sherwood* for plaintiff in error.

(1) While it is declared in section 20, article 2, Constitution, that "Whenever an attempt is made to take private property for a use alleged to be public, the question of whether the contemplated use be really public shall be a judicial question and as such judicially determined without regard to any legislative assertion that the use is public," still, section 14,

article 12, declares that railroads are public highways and railroad companies common carriers and hence, section 20 of article 2 is limited so far as concerns railroads, and there is no question for the courts to determine, for the same power which declares that what is a public use shall be a judicial question, also declares that a use for railroad purposes is a public use. Thompson v. Railroad, 110 Mo. 160. Our courts will take judicial notice that the taking of private property for a railway is a taking for public use. Walther v. Warner, 25 Mo. 277; Thompson v. Railroad, supra; Dickey v. Tennison, 27 Mo. 376. (2) In the absence of any declaration such as is contained in section 20, article 2, Constitution, that what is a public use shall be a judicial question, which must be determined by the courts, the courts would so determine (St. Louis County Court v. Griswold, 58 Mo. 175); but when a determination is reached that a certain use is a public use, the judicial function is then exhausted, for the extent of the power and the person or corporation or classes of persons or corporations, to exercise the power, are legislative questions. Whether a proposed road will subserve the public need or convenience is a question for the Legislature and not for the judiciary. Sherman v. Buck, 32 Cal. 241. Discretion is vested in the officers of a corporation, possessing the power, to fix the location of the line of improvement. Railroad v. Railroad, 41 Fed 299; O'Hare v. Railroad, 139 Ill. 151; Struthers v. Railroad, 87 Pa. St. 282; Ford v. Railroad, 14 Wis. 609; Railroad v. Moss, 23 Cal. 323; Schmidt v. Densmore, 42 Mo. 225; Dietrich v. Railroad, 13 Neb. 361; In re Railroad, 53 N. Y. 574; Railroad v. Brown, 9 H. L. Cas. 246; Railroad v. Manhattan G. L. Co., 5 Hun (N. Y.) 201; Railroad v. Dunbar, 100 Ill. 112. The owner of land devoted to private use can not question the selection of his property; he can not urge that the land is not suitable or suggest engineering or financial difficulties in opposition; nor

present questions of feasibility.    Coffman v. Griffin, 17 W. Va. 178.    Nor can he show that another location would be less harmful.    Railroad v. Young, 33 Pa. St. 175; Eversfield v. Railroad, 3 DeG. & J. 286; Railroad v. Hannibal U. D. Co., 125 Mo. 82.    The courts will hold the use public, unless it manifestly has no tendency to promote such use.    Welton v. Dickson, 38 Neb. 767.    When the use is public, the judiciary can not inquire into the necessity or propriety of exercising the right of eminent domain.    Railroad v. Town of Lake, 71 Ill. 333.    (3) The test of what constitutes a public use is the following:    Will all persons upon demand be served by a corporation which claims to be fulfilling a public purpose, or use, and upon refusal can they enforce that demand in the courts? Varner v. Martin, 21 W. Va. 534; Canal Co. v. Bouleam, 9 W. & S. 27; Wood v. Railroad, 8 Phila. 94; Railroad v. Railroad, 41 Fed. 297; Mills, Em. Dom., sec. 14; De Camp v. Railroad, 47 N. J. L. 44; Board of Health v. Van Hoesen, 87 Mich. 533; Bonaparte v. Railroad, Bald. (C. C.) 205; Market Co. v. Railroad, 142 Pa. St. 580; Railroad v. Railroad, 41 Minn. 461; Belcher Sugar Ref. Co. v. St. Louis Elevator Co., 82 Mo. 121; Lombard v. Stearns, 4 Cush. 60.    If all of the people of a state or all of the people of a small community have the right to demand and receive service, which that corporation holds itself out to the public as intending and able to furnish, then the use or purpose is a public use, notwithstanding the fact that but a small portion of the people of a state or but one or two people in a small community desire to avail themselves of the privilege.    Talbot v. Hudson, 16 Gray (Mass.), 417; Railroad v. Railroad, supra; Railroad v. Moss, 23 Cal. 324; De Camp v. Railroad, supra; Bloomfield N. G. L. Co. v. Richardson, 63 Barb. 448; Fanning v. Gilliland (Ore.), 61 Pac. Rep. 636; Hartwell v. Armstrong, 19 Barb. 166; Aldridge v. Railroad, 2 Stew. & Par. 199; Gilmer v. Lime

Point, 18 Cal. 229; Coster v. Tide Water Co., 18 N. J. Eq. 54; O'Reilly v. Kankakee V. D. Co., 32 Ind. 169; Riche v. Bar Harbor Water Co., 28 Alb. L. J. 498; Phillips v. Watson, 63 Iowa, 28; Railroad v. Railroad, 32 N. J. Eq. 755; Railroad v. Porter, 43 Minn. 527; Ross v. Davis, 97 Ind. 79; Lindsay Irrigation Co. v. Mehrtens, 97 Cal. 676; Pocantico Water Works v. Bird, 130 N. Y. 249; Miller v. Craig, 11 N. J. Eq. 175; Seely v. Sebastian, 4 Ore. 27. (4) Public use and public convenience are interchangeable terms. 1 Pa. St. 309; Talbot v. Hudson, 16 Gray 417. The term "public use" is flexible, and not limited to uses known at the time a state constitution was adopted. All useful improvements may be encouraged by the exercise of eminent domain. Any use of anything which will satisfy a reasonable public demand for facilities of travel, for transmission of intelligence, or of commodities would be a public use. Turnp. Co. v. News Co., 43 N. J. L. 384; Railroad v. Greely, 17 N. H. 47; Railroad v. Tel. Co., 53 Ala. 211; Mining Co. v. Seawell, 11 Nev. 394; Paxton & H. Irrig. Canal & Land C. v. Farmers & M. Irrig. & Land Co., 45 Neb. 884, 29 L. R. A. 853, 64 N. W. 343; Talbot v. Hudson, 16 Gray, 417; Township Bd. of Edu. v. Hackmann, 48 Mo. 243; M. & G. Road Co. v. Renfroe, 58 Mo. 265; Lafayette Pl. Road Co. v. Railroad, 13 Ind. 90, 74 Am. Dec. 246; Higginson v. Nahant, 11 Allen 530; Southwest Pennsylvania Pipe Lines v. Directors of Poor, 1 Pa. Co. Ct. 460; Mount Washington Road Co.'s Petition, 35 N. H. 134; Balch v. Essex County Commrs., 103 Mass. 106; St. Louis County Ct. v. Griswold, 58 Mo. 175; Re Towanda Bridge Co., 91 Pa. 216; Commrs. of Parks and Boulevards v. Moesta, 91 Mich. 149, 51 N. W. 903; Kansas City v. Ward, 134 Mo. 172, 35 S. W. 600; Hazen v. Essex Co., 12 Cush. 475; Re United States, 96 N. Y. 227; Calking v. Baldwin, 4 Wend. 667, 21 Am. Dec. 168; Willyard v. Hamilton, 7

Ohio, pt. 2, p. 111, 30 Am. Dec. 195; Re Townsend, 39 N. Y. 171; Canal Co. v. Key, 3 Cranch C. C. 599; Re Main & H. Street Canal, 50 How. Pr. 70; Morris Canal & Bkg. Co. v. State, 24 N. J. L. 62; Canal Co. v. Garrity, 115 Ill. 155, 3 N. E. 448; Atty. Gen. v. Telephone Co., L. R. 6 Q. B. Div. 244; Telephone Co. v. Keesey, 5 Pa. Dist. R. 366; Transp. Co. v. Oil & Coal Co., 5 W. Va. 382; Consumers' Gas Trust Co. v. Huntsinger, 14 Ind. App. 166, 42 N. E. 640; Pittsburgh's Appeal, 115 Pa. 4, 7 Atl. 778; Natural Gaslight Co. v. Richardson, 63 Barb. 437; State ex rel. v. Oil, Gas & Min. Co., 120 Ind. 581, 6 L. R. A. 579, 22 N. E. 778; Johnston v. People's Natural Gas Co. (Pa.), 5 Cent. Rep. 564; Oury v. Goodwin (Ariz.), 26 Pac. 376; Canal & Improv. Co. v. Kenilworth Canal Co., 3 Colo. App. 244, 32 Pac. 860; Lieberman v. Railway, 141 Ill. 140, 30 N. E. 544; Railroad v. Wilson, 17 Ill. 123; Railroad v. Muder, 49 Mo. 165; Railroad v. Elliott, 5 Nev. 358; Transp. Co. v. Mansfield Comrs., 23 N. J. L. 510, 57 Am. Dec. 409; Railroad v. Raymond, 53 Cal. 223; Railroad v. Met. Gaslight Co., 5 Hun 201, 63 N. Y. 326; Boyd v. Negley, 40 Pa. 377; Phillips v. Watson, 63 Iowa, 28, 18 N. W. 659; De Camp v. Railroad, 47 N. J. L. 43, 518, 4 Atl. 318; Re Railroad, 77 N. Y. 248; Eldridge v. Smith, 34 Vt. 484; Railroad v. Davis, 43 N. Y. 137; Fisher v. Railroad, 104 Ill. 323; Reusch v. Railroad, 57 Iowa, 687, 11 N. W. 647; United States v. Oregon R. & Nav. Co., 9 Sawy. 61, 16 Fed. Rep. 524; Haldeman v. Railroad, 50 Pa. 425; Bowman v. Wathen, 2 McLean, 376; Arnold v. Bridge Co., 1 Duv. 372; Young v. Buckingham, 5 Ohio, 485; St. Louis v. St. Louis Gaslight Co., 70 Mo. 69; Egyptian Levee Co. v. Hardin, 27 Mo. 495, 72 Am. Dec. 276; Mithoff v. Carrollton, 12 La. Ann. 185; Cottrell v. Myrick, 12 Maine 222; Mugler v. Kansas, 123 U.

S. 623, 8 Sup. Ct. Rep. 273; Anderson v. Kerns Draining Co.,. 14 Ind. 199, 77 Am. Dec. 63; Patterson v. Mississippi & R. River Boom Co., 3 Dill. 465, 98 U. S. 403; Cotton v. Mississippi & R. River Boom Co., 22 Minn. 372; Re Burns, 155 N. Y. 23, 49 N. E. 246; Joplin Consol. Min. Co. v. Joplin, 124 Mo. 129, 27 S. W. 406; Hildreth v. Lowell, 11 Gray. 345; Lumbard v. Stearns, 4 Cush. 60; Wayland v. Middlesex County Commrs., 4 Gray. 500; Fleming's Appeal, 65 Pa. 444; Overman Silver Min. Co. v. Corcoran, 15 Nev. 147; Hand Gold Min. Co. v. Parker, 59 Ga. 419; Belcher Sugar Ref. Co. v. St. Louis Grain El. Co., 10 Mo. App. 401; Illinois & St. L. R. & Canal Co. v. St. Louis, 2 Dill. 70; Pearson v. Johnson, 54 Miss. 259; Pittsburgh v. Scott, 1 Pa. St. 309; New Central Coal Co. v. George's Creek Coal & I. Co., 37 Md. 537; Ryan v. Louisville & N. Terminal Co., 102 Tenn. 111, 50 S. W. 744; Lyon v. McDonald, 78 Tex. 71, 14 S. W. 261; Twelfth Street Market Co. v. Railroad, 142 Pa. 580, 21 Atl. 902, 989; Re Girard College Grounds, 10 Phila. 145; University of Minnesota v. Railroad, 36 Minn. 447, 31 N. W. 936; Railroad v. Chicago, 140 Ill. 309, 29 N. E. 1109; Railroad v. Chicago, 149 Ill. 457, 37 N. E. 78, 166 U. S. 266, 17 Sup. Ct. Rep. 581; Lewis Em. Domain, sec. 266; Railroad v. Chicago, 148 Ill. 509, 37 N. E. 88, 91; Railroad v. Chicago, 151 Ill. 348, 37 N. E. 842; Railroad v. Chicago, 138 Ill. 453, 28 N. E. 740; Railroad v. Railroad, 30 Ohio St. 604; Railroad v. Railroad, 105 Ill. 388, 44 Am. Rep. 799; Railroad v. Lake, 71 Ill. 333; Railroad v. Railroad, 97 Ill. 506; Railroad v. Dayton, 23 Ohio St. 510; Canal Co. v. Whitehall, 90 N. Y. 21; Railroad v. Chicago, 141 Ill. 586, 30 N. E. 1044; Railroad v. Chicago, 151 Ill. 359, 37 N. E. 880; Railroad v. Brownell, 24 N. Y. 345; Railroad v. Greenbush, 52 N. Y. 510; Railroad v. Railroad, 118 Mo. 599, 24 S. W. 478; R. S. 1889, sec. 2543; R. S. 1899, sec. 1035.

Private property taken for a highway is taken for a public use, though the highway accommodates but a single family. Lewis v. Washington, 5 Gratt. 265; Roberts v. Williams, 15 Ark. 43; Paine v. Leicester, 22 Vt. 44; Drake v. Clay, Sneed (Ky.), 139; Johnson v. Clayton County Supers., 61 Iowa, 89, 15 N. W. 856; Pagels v. Oaks, 64 Iowa, 198, 19 N. W. 905. Or though it be a mere *cul de sac.*   Schatz v. Pfeil, 56 Wis. 429, 14 N. W. 628; People v. Van Alstyne, 3 Keyes, 35; Sheaff v. People, 87 Ill. 189; Fanning v. Gilliland (Or.), 61 Pac. 636; Masters v. McHolland, 12 Kan. 17.   (5)   When it is determined that a taking for railroad purposes is a public use, the fact that some of the stockholders of the plaintiff company are the same as those of the Kansas & Texas Coal Company, which company owns large tracts of land underlaid with coal, over some or all of which the projected road will run, makes no difference, and evidence thereof is not admissible, as the essentials of the legal test have been met, and discussion is at an end.   Railroad v. Railroad, 41 Fed. Rep. 293; De Camp v. Railroad, 47 N. J. L. 44; Railroad v. Moss, 23 Cal. 324.   (6)   The fact that a corporation, plaintiff in a condemnation proceeding, is a corporation *de facto* and not *de jure,* or that advantage of corporation laws has been taken by its promoters for their own private purposes, whereby such laws are abused; or that the corporation is defectively organized and hence has no legal capacity to sue, are questions for the State in a quo warranto proceeding and can not be raised in a condemnation suit by answer or between private parties in chancery—where the plaintiff's compliance with the law of its organization is regular upon its face— although the act authorizing the organization of the corporation be unconstitutional.   Catholic Church of Lexington v. Tobbein, 82 Mo. 418; Finch v. Ullman, 105 Mo. 255; Crenshaw v. Ullman, 113 Mo. 613; Railroad v. Miller, 56 Ind. 88; Rail-

road v. Lawrenceburg, 56 Ind. 80; Railroad v. Railroad, 32 N. J. Eq. 755; Henry v. Railroad, 121 Ill. 266; Brown v. Railroad, 125 Ill. 600; Rex v. Pasmore, 3 J. R. 244; Rex v. Carmathen, 2 Burr. 869; State v. Patterson & H. T. Co., 1 Zab. (N. J.) 9; Atty-Gen. v. Stevens, Sax. (N. J.) 369; Cooley Const. Lim. (5 Ed.), 311. Besides, corporate exist-ence, as alleged, is admitted unless denied in writing under oath, and not only was no denial filed herein, but incorporation was admitted. Bank v. Williamson, 61 Mo. 259. (7) Plain-tiff in error has the power of eminent domain, but defendant coal company has not. This being so, no question is open for discussion except that of adequate compensation, unless section 2741, section 1272 Revised Statutes 1899, be valid. Either section 2741, Revised Statutes 1889, section 1272, Revised Statutes 1899, exempts from condemnation the property of the Northwestern Coal & Mining Company, because it is a business corporation, and therefore comes within the meaning of the words "any corporation" therein contained, or it does not. (a) It is doubtful, putting it mildly, whether section 2741 can be held to exempt from condemnation the property of a corpora-tion whether it has the power of eminent domain or not, because sec. 4 of article 12 of our Constitution prohibits any ex-emptions in favor of a corporation, which is not also made with respect to the property of individuals, and no individual prop-erty is exempted, except dwelling houses, etc., and this exemp-tion only prevents condemnation by telephone and telegraph companies. Sec. 2740, R. S. 1889; Id., sec. 1270, R. S. 1899. Railroad v. Railroad, 125 Mo. 93. (b) Section 2741, Revised Statutes 1889, if valid, does not exempt the property of a business corporation. If section 2741, Revised Statutes 1889, does apply to every conceivable kind of corporation or-ganized under the laws of this State, then said section is void as a limitation upon the power of eminent domain because in

violation of section 4, article 12 of the Constitution. Thomas v. Railroad, 40 Fed. 126; Railroad v. Hannibal U. D. Co., 125 Mo. 92; Kansas City v. Oil Co., 140 Mo. 458. (8) It is well settled that a corporation, though organized for private gain, may exercise the power of eminent domain, if the use be public. Leisse v. Railroad, 2 Mo. App. 105; Railroad v. Gott, 25 Mo. 540. Enterprises, using the power of eminent domain, are often of private benefit. When capable of furthering a public use, the private benefit is immaterial. Talbot v. Hudson, 16 Gray 417; Moore v. Sandford, 151 Mass. 285; Railroad v. Dix, 109 Ill. 237; Kean v. Elizabeth, 54 N. J. L. 462; Brown v. Beatty, 34 Miss. 227; Salt Co. v. Brown, 7 W. Va. 191; Bloodgood v. Railroad, 18 Wend. 9, 21, 83. (9) To defeat a proceeding to appropriate land for a railroad, it is not competent for the landowner to prove that the corporators procured the incorporation for their private purposes merely, and are exercising the corporate privileges in abuse of the law, or that there is no public necessity for the road; compliance with statute authorizing incorporation is a legislative declaraton of necessity. Powers v. Railroad, 33 Ohio St. 429; Railroad v. U. D. Co., 125 Mo. 94; Railroad v. Railroad, 32 N. J. Eq. 755; Railroad v. Miller, 56 Ind. 88. Fact that a company lawfully organized to build a certain line of road fraudulently intends to build but part of such line is no ground for enjoining construction of that part. The organization of a railroad company, regular on its face, can not be attacked collaterally. Railroad v. Lawrenceburg, 56 Ind. 80. (10) Court of justice in passing upon the question whether or not a use is public will view its legal aspects only, and will not consider an allegation that the corporation may not fully perform its public duties. Ligare v. Chicago, 139 Ill. 46; Staten Island R. T. Co., 103 N. Y. 25; Slinger, Admr., v. Newark, 54 N. J. L. 62; Talbot v. Hudson, 16 Gray, 417; Kansas City v. Baird, 98 Mo. 215;

Railroad v. Miller, 56 Ind. 88; Railroad v. Lawrenceburg, 56 Ind. 80; Backus v. Lebanon, 11 N. H. 19; Sunderland Bridge, 122 Mass. 459; In re Opinion of the Justices, 66 N. H. 620; Railroad v. Gas Light Co., 63 N. Y. 326 (affirming 5 Hun, 201); Hamor v. Bar Harbor Water Co., 78 Me. 127; In re Bellona Co., 3 Bland (Md.), 442; Toll-Bridge Co. v. Railroad, 17 Conn. 40, 454.    (11) The evidence does not show a material interference with the use to which by law the defendant coal company is entitled to subject its property.

*Ben Eli Guthrie* and *Dysart & Mitchell* for defendant in error.

(1)    If this proceeding is an action at law, as plaintiff in error seems to treat it, then the finding of the lower court on questions of fact is conclusive on this tribunal, since there is abundant evidence, even in the abstract furnished by plaintiff to sustain such finding.    James v. Mut. Reserve Fund Life Ass'n, 148 Mo. 15.    (2) Plaintiff can have no power to condemn land except as granted by law.    Such right is the gracious gift of the Legislature uninduced by any obligation or duty to the plaintiff.    The Legislature is the sovereign power to give or withhold as to it seems good.    And it has the undoubted right to accompany the grant with such conditions, limitations and restrictions as may suit its sovereign will. Plaintiff, like other beggars, must take the grant with all its burdens or go without it.    In this case the limitation is part of the grant, and if for any cause the limitation fails, the grant goes with it, and plaintiff is absolutely devoid of all power to condemn.    Railroad v. Railroad, 94 Mo. 543, 544.    (3) The constitutionality of the limitations of said section 1272 has never been called in question, although it has received the attention of this court more than once.    Railroad v. Hannibal Union

Depot Co., 125 Mo. 92, 93; Railroad v. Railroad, 94 Mo. 542, 543; Railroad v. Railroad, 118 Mo. 611; Railroad v. Railroad, 129 Mo. 68.    (4) It has never been doubted that it was competent for the Legislature to exempt certain property from the exercise of eminent domain.    10 Am. and Eng. Ency. Law (2 Ed.), p. 1099; Willoughby v. Shipman, 28 Mo. 50. (5) It is also competent for the Legislature to prescribe the estate or extent of the interest that may be taken in the property of another.    Kellogg v. Maylin, 50 Mo. 496.    (6) This provision exempting certain property of other corporations from the exercise of eminent domain is repeated by the legislature in two separate articles, to-wit, article 7, section 1272, and article 9, section 1350, Revised Statutes 1899.    And it is significant that one of these prohibitions is under the head of manufacturing and business companies.    Under this head, see Railroad v. Railroad, 94 Mo. 536.    (7) Though section 1272 may not protect the defendants, as the lower court found and adjudged, still, the judgment is for the right party on the record and can not be reversed.    The whole evidence relating to the use of plaintiff's road is before the court, and the finding of fact of the court is also before it.    And this court can review and determine the question of public use for itself.    It is well to note that there is no contention in this case that a railroad use is not a public use, that is, a public railroad, not a private railroad.    It is contended, however, that a private railroad is a private use and does not come within the constitutional provision.    It is well further to note that there is no contention here that a railroad charter, regular on its face, can be questioned collaterally. And there is no attempt to assail the charter of the plaintiff. It is nearer the contention of the defendants to say that their insistence is that plaintiff's road is a private road and not a public one; is for a private use and not a public use.    "The inquiry is not as to what the company was organized for, or

whether it is to be a private or public corporation, but what the road will be—the structure itself—if any such thing shall be made." (8) Section 20, article 2, of the Constitution reads: "Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public, shall be a judicial question, and as such judicially determined without regard to any legislative assertion that the use is public." Consequently, a party seeking to appropriate private property for an alleged public use must show: First, A legislative warrant. Second, That it is a true railroad within the meaning of the Constitution, and the law and the statute. Third, That the taking is in fact for a public use. In re Railroad, 108 N. Y. 375; Railroad v. Railroad, 34 Fed. Rep. 386; In re Cable Road Co., 128 N. Y. 408; Railroad v. Wiltse, 116 Ill. 449; s. c., 6 N. E. 49; Water Co. v. Winans, 85 Wis. 25; s. c., 39 Am. St. Rep. 813. (9) The use to which plaintiff seeks to put the land condemned is a private use. Its only purpose is to take out to the market the coal of the Kansas & Texas Coal Company, the evidence clearly shows that is the only business that there can be for it. There is no other demand for the railroad. It is simply to get to coal mines and that is not a public use. Railroad v. Railroad, 34 Fed. Rep. 386; Railroad v. Wiltse, 116 Ill. 449; Weidenfeld v. Railroad, 48 Fed. Rep. 615; Railroad v. Benwood Iron Work, 31 W. Va. 710; s. c., 2 L. R. A. 680; Kyle v. Railroad, 4 L. R. A. 275; Railroad v. Felton, 69 Fed. Rep. 278, 279. "The mere declaration in a petition that the property is to be appropriated for public use, does not make it so, and evidence that the public will have a right to use it amounts to nothing in the face of the fact that the only incentive to ask for the condemnation was private gain, and it was apparent that the general public had no interest in it." (10) The court can in no event reverse this judgment and permit the condem-

nation of the defendant's right of way.    Plaintiff's object is wrong *in toto*.    It is simply to shut the defendant operators, its rival business, out of the market and make them absolutely dependent on plaintiff and its owner.    It hems and shuts them in, puts them out of business, leaves their properties a wreck on their hands without value to anyone save and except plaintiff's master and owner alone, who is left, "monarch of all it surveys."    This neither law or equity will tolerate.    Railroad v. Felton, supra.    (11) The court will look to see what use the property sought to be condemned is proposed to be put.    The Mayor v. Harris, 73 Ga. 428; Ligare v. Chicago, 139 Ill. 64. (12) To reach a coal region is not a public use.    McCanaless' Appeal, 70 Pa. St. 210; The Mayor v. Harris, 73 Ga. 428; In re Railroad, 110 N. Y. 126; The State v. Railroad, 40 Ohio St. 504; Salt Co. v. Brown, 7 W. Va. 191; Varner v. Martin, 21 W. Va. 536.

MARSHALL, J.—The plaintiff is a duly organized and chartered railroad company, under the provisions of article 2 of chapter 42, Revised Statutes 1889, for the purpose of constructing and operating a broad gauge railroad "for public use in the conveyance of persons and property from a point in, at or near the town of Ardmore, Macon county, Missouri, to a point in, at or near the town of Bevier in the same county and State, a distance of ten miles or more."    The plaintiff is also the lessee for a term of twenty years from July 1, 1899, from the Wabash railroad of its branch railroad from Excello to Ardmore.    So that the plaintiff's railroad with the leased line aforesaid will form a continuous railroad from the town of Excello, on the Wabash railroad, to the town of Bevier, on the Hannibal & St. Joseph railroad.    The defendant, the Northwestern Coal & Mining Company, is a business corporation, organized under the provisions of article 8, of chapter 42,

Revised Statutes 1889, for the purpose of acquiring, selling and operating coal lands and coal mines, and to buy, sell and deal in merchandise, and to own, operate and sell electric light and power plants and to furnish and sell electric light and power. The said defendant holds as owner or lessee considerable land on which there have been opened and are being operated coal mines, and in connection with the defendant Watson, owns a railroad and right of way therefor, beginning at a mine owned by defendant Watson and located several thousand feet southeast of the coal company's mine, and extending in a general northwardly direction, to and beyond the mine of the coal company, called "Mine No. 7," and to or near a bridge over Sulphur creek, at which point it connects with a railroad owned by the Kansas & Texas Coal Company (likewise a business corporation), and over which last named road the cars of the railroad owned by the defendant coal company and Watson are run under a contract therefor with the Kansas & Texas Coal Company for a distance of about thirteen hundred feet, to the town of Bevier, on the line of the Hannibal & St. Joseph Railroad. In this way the output of coal from the Watson mine and the Northwestern Coal & Mining Company's Mine No. 7, is transported to the line of the Hannibal & St. Joseph Railroad, and over that road to the markets of the world.

The mine of the Northwestern Coal & Mining Company, called Mine No. 7, was leased by that company to the Kansas & Texas Coal Company, on the fifteenth of March, 1898, for a term beginning on the first of January, 1898, "until such time as the coal in and underlying said lands shall be entirely worked and in the manner" provided in the lease unless the lease is sooner terminated as therein provided. The lease provided that the lessor was to receive a royalty of five and one-half cents per ton of two thousand pounds, and that the lessee should so operate the mine that the royalty should exceed or equal the

sum of $550 a month, and the lessee should also pay such royalty of five and one-half cents per ton on all coal mined in excess of 120,000 tons a year. The lessor reserved the right to cancel the lease on the first of April, 1901, or on the first of April of any subsequent year by giving six months' notice of intention so to do.

Under the terms of this lease the Kansas & Texas Coal Company, is, and at all the times since the date of the lease has been, operating Mine No. 7, and the average daily output of the mine is seven hundred tons, while that from the Watson mine is from 500 to 600 tons daily.

The railroad of the Kansas & Texas Coal Co. over which the cars of the defendant run from Sulphur Creek to Bevier, extends southwestwardly from the intersection of those roads to Mine No. 43, which mine is also operated by the Kansas & Texas Coal Company.

This was the condition of affairs on the sixteenth of April, 1899, when the Kansas & Texas Coal Railway instituted this proceeding, under the provisions of article 6, chapter 42, Revised Statutes 1889, for the purpose of condemning a right of way over five pieces of real estate, three of which pieces lie immediately east of the main line of the railroad of the Northwestern Coal & Mining Company, and such strips commence seven feet east of the center line of the main or most eastward track of the Northwestern Coal & Mining Company's railroad and extend from Sulphur Creek for a distance of some 3,700 feet to a point 1,700 feet south of Mine No. 7, where it is proposed to cross the railroad of the Northwestern Coal & Mining Company. In other words, the purpose of this suit is to condemn a right of way for the plaintiff railroad beginning at Sulphur Creek and parallelling the most easterly track of the Northwestern Coal & Mining Company's railroad for a distance of thirty-seven hundred feet and there crossing the de-

fendant's track, so as to proceed to the town of Ardmore.    The western line of the right of way sought to be acquired by the plaintiff is seven feet from the center of the defendant's main or most easterly track, and the center of the plaintiff's track is fourteen feet from the center of the defendant's main track.

The plaintiff's petition is in the usual and proper form. The answer of the defendant, the Northwestern Coal & Mining Company, is a general denial and special defenses. The special defenses are: first, that the plaintiff has not the right to condemn land; second, that the St. Louis Trust Company is a necessary party defendant because it is the holder of bonds issued by the Kansas & Texas Coal Company; third, that the plaintiff is not a public railroad corporation and has no intention to build a railroad for public use, "but that the plaintiff corporation has been promoted and organized by and is owned and belongs to, the defendant The Kansas & Texas Coal Company; that said coal company and said railway have the same officers and largely, if not entirely, the same stockholders; that the Kansas & Texas Coal Company owns and controls a large number of mines and coal lands in Macon county near Bevier and Ardmore and between those two places, and has furnished the plaintiff company about $70,000 to build the road and holds a mortgage therefor on the plaintiff company's property; that the plaintiff railroad is organized solely in the interest and for the benefit of the Kansas & Texas Coal Company," and avers that it would be a fraud to take the defendant's property for the purpose of a right of way for the plaintiff railway; fourth, that the defendant coal company is engaged in the mining business near Bevier and owns the land the plaintiff railway proposes to condemn, and in connection with defendant Watson it has built and owns and operates a railroad to carry its coal to the Hannibal & St. Joseph Railroad for shipment to the mar-

Vol 161 mo—20

kets; that it has only a right of way of forty feet and that all of it is necessary for the proper operation of its mines and railroad; that plaintiff's proposed right of way is within seven feet of the center line of defendant's railroad, and if plaintiff is allowed to condemn the right of way so described, it will largely, if not wholly, destroy the defendant's business, and that the plaintiff ought not to be allowed, under the guise of building a railroad, to destroy the business of the defendant for the benefit of its rival in business, the Kansas & Texas Coal Company; fifth, that the construction of the plaintiff's road as contemplated would also ruin Watson's business, and would force him and the defendant coal company to use the plaintiff's road, and put them at the plaintiff's mercy as to charges and railroad rates; sixth, that there is no necessity for the plaintiff to condemn this land because it owns a right of way one hundred feet wide adjoining the defendant's right of way on the east, and the plaintiff could and should be compelled to build the road on the land it already owns; seventh, that it is inequitable, unjust and contrary to law and good conscience to allow the plaintiff to condemn this land since it is not for a public purpose but for the benefit of the Kansas & Texas Coal Company, and that "its business would be greatly injured, not to say ruined by allowing plaintiff to build and construct the railroad upon the line marked out." The answer asks that the petition be dismissed, that the court refuse to appoint commissioners to assess damages and that the plaintiff be enjoined from condemning or attempting to condemn a right of way along the specified line or from building a railroad thereon.

The trial court heard evidence upon the issues so raised by the answer, and decided that the plaintiff had a right to condemn land, as the purpose was a public use, but that the condemnation and use by the plaintiff railroad of the three tracts of land owned by the defendant coal company would materially

interfere with the uses which the defendant coal company is authorized by law to subject such lands to, and therefore the plaintiff could not condemn this land under section 2741, Revised Statutes 1889, and hence the court refused to appoint commissioners to assess the damages and entered a final judgment for the defendants. After proper steps the plaintiff brought the case to this court by writ of error.

## I.

The plaintiff is a regularly organized and chartered railroad company under the laws of this State, and therefore it has power of eminent domain to condemn land for a right of way not exceeding one hundred feet wide. This is conceded by defendants as a general proposition, in this case, and it is further conceded by the defendants that a railroad charter, regular on its face, can not be attacked or questioned collaterally or in any manner except by quo warranto. But it is contended by the defendants, first, that the plaintiff is a private and not a public railroad, and therefore it has no power of eminent domain, and second, that the use to which the land here attempted to be condemned and appropriated and applied is a private and not a public use.

In support of the first contention, it is claimed that the plaintiff is a mere tool or creature of the Kansas & Texas Coal Company; that the officers and directors of the two are the same, and the stockholders substantially the same; that the coal company furnished seventy thousand dollars to the plaintiff to build its railroad and holds a mortgage on its property for that amount, and that the coal company owns large coal mines and large tracts of coal lands in Macon county, near Bevier and Ardmore and between those places, and that the plaintiff is organized solely for the purpose of benefiting the coal company,

and hence the plaintiff is a private and not a public railroad. And in support of the second contention it is claimed that the first contention being true, the use to which the land is to be applied is a private and not a public use.

If, as it is conceded, the plaintiff is a regularly organized railroad company and its charter and rights can not be questioned except by quo warranto, it is difficult to understand how the courts in a proceeding of this character can hear evidence as to whether the officers, directors or stockholders of the plaintiff company are the same as those of the Kansas & Texas Coal Company, or whether the coal company loaned the plaintiff company seventy thousand dollars or any other sum.   For, if all this be conceded, it would avail nothing in this case, unless the rights inherent in and expressly granted to a railroad company could be inquired into and taken away from such a company in a collateral proceeding.   [Natl. Docks Co. v. Railroad, 37 N. J. Eq. l. c. 755-760.]   But aside from this the contention is untenable.   There is nothing in the letter or spirit or policy of the law which prohibits the same persons from forming and conducting two or more different corporations, one a business and the other a railroad company.   Neither is there any prohibition in the law against a railroad company borrowing money, on bonds secured by mortgage on its property, to build and operate its road, from a business corporation rather than from a bank, a trust company or an individual.

The second contention is equally untenable.   The charter of the plaintiff and the laws of this State expressly require the plaintiff to transport persons and freight, and the plaintiff can be compelled by mandamus to do so if it refuses.   The fact that almost the entire volume of business now in sight for the plaintiff to do will be the transportation of coal produced by the Kansas & Texas Coal Company does not destroy the charac-. ter of the plaintiff as a railroad company nor convert it into a

private and not a public railroad, nor does it make the use to which the land sought to be condemned is to be applied any the less a railroad right of way and therefore a public use.    So long as the company holds its charter, it speaks in the name of the State when it comes into court and asks to condemn land for a railroad right of way, and it would be intolerable that whenever it seeks to exercise the extraordinary power by this summary process, the courts should stop to inquire into the charter or regularity or legality of its organization, or into the motives of the incorporators or their relations to or holdings in other corporations of a different character.    The law is settled in this and other States that the use of land for railroad tracks is a public use.    [St. L. H. & K. C. Ry. v. Hannibal U. D. Co., 125 Mo. 82; Dietrich v. Murdock, 42 Mo. 279; Railroad v. McGrew, 104 Mo. 282; Contra Costa Coal Mines Railroad Co. v. Moss, 23 Cal. l. c. 328; Col. E. Ry. Co. v. U. P. Ry., 41 Fed. Rep. 293; DeCamp v. Railroad, 47 N. J. L. 44; Railroad v. Petty, 21 S. W. Rep. 884; Railroad v. Railroad, 103 Fed. Rep. 747.]

So that while it is true that the Constitution (section 20, article 2) provides, "that whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and as such judicially determined, without regard to any legislative assertion that the use is public," it is also true that it has been judicially determined that the use of land for a railroad right of way is a public use and not a mere private use.

There can be no doubt that if the Wabash railroad was asking to condemn this land to extend its branch that now runs from Excello to Ardmore so as to reach these coal mines, or if the Hannibal & St. Joseph Railroad was seeking to condemn a right of way for a branch from Bevier to these coal fields, it

would be a condemnation of land for a public use.   And if either of these existing roads did this they would serve the same public purpose, get the same business and act under and be subject to the same laws, as the plaintiff is seeking to do.   There is no difference in right or in principle whether it be done by either of those great railroad systems as a mere branch thereof, or whether it be done by the plaintiff whose road and leased line is only about a dozen miles in length. The length of the road does not determine the right or the nature or character of the use of the land.   Many roads of less mileage than the plaintiff's serve most useful public purposes, are almost indispensable to commerce and are veritable gold mines to their owners.   The output from Mine No. 7, leased by the defendant coal company to the Kansas & Texas Coal Company, averages seven hundred tons a day.   This alone is quite a considerable business, and if the plaintiff company serves no other purpose than to help to get that much coal to the markets every day, it will serve a most useful public purpose, even if it gets no other business, and as herein pointed out, it can be compelled to carry other freights and passengers.

This case is not without precedent in the law, and all of the defenses that are made here have been made and held insufficient in other cases.   A reference to a few will suffice:   Dietrich v. Murdock, 42 Mo. 279 ; Contra Costa Coal Mines Railroad Co. v. Moss, 23 Cal. 323 ; Colorado Eastern Ry. v. Union Pacific Ry., 41 Fed. Rep. 293 ; New Central Coal Co. v. George's Creek Coal & Iron Co., 37 Md. 537 ; Powers v. Railroad, 33 Ohio St. 429 ; Railroad v. Montana Union Ry., 31 L. R. A. 298 ; National Docks Ry. Co. v. Central Ry. Co., 32 N. J. Eq. 755 ; DeCamp v. Railroad, 47 N. J. L. 44 ; Dayton Gold Mining Co. v. Seawell, 11 Nev. 394 ; Overman Silver Mining Co. v. Corcoran, 15 Nev. 147 ; Boyd v. Negley, 40 Pa. St. 377 ; Phillips v. Watson, 63 Iowa 28.

The cases of Dietrich v. Murdock, 42 Mo. 279; Contra Costa Coal Mines Railroad Co. v. Moss, 23 Cal. 323; Railroad v. Railroad, 41 Fed. Rep. 293; Coal Co. v. Coal & Iron Co., 37 Md. 537; Powers v. Railroad, 33 Ohio St. 429; Railroad v. Railroad, 31 L. R. A. 298; DeCamp v. Railroad, 47 N. J. L. 44; Dayton Gold Mining Co. v. Seawell, 11 Nev. 394; Overman Silver Mining Co. v. Corcoran, 15 Nev. 147; Boyd v. Negley, 40 Pa. St. 377; and Phillips v. Watson, 63 Iowa, 28, are in all essential particulars similar to the case at bar. They were cases where an existing railroad was endeavoring to condemn a right of way for a railroad that would reach coal or mineral mines and transport the products thereof to the markets, or where a new railroad company organized practically for that purpose was seeking to do the same thing. In Dietrich v. Murdock, 42 Mo. 279; Contra Costa Coal Mines Railroad Co. v. Moss, 23 Cal. 323; Colorado Eastern Ry. v. Union Pacific Ry., 41 Fed. Rep. 293; New Central Coal Co. v. George's Creek Coal & Iron Co., 37 Md. 537, and Powers v. Railroad, 33 Ohio St. 429, the same persons owned the coal mines and the railroad, and the railroad was organized principally to transport the products of the coal mines to the market, and precisely the same objections and defenses were made in those cases as are made in this case, yet in each instance the right of eminent domain was sustained and the use declared to be a public use. These precedents are in entire consonance with reason, principle and the spirit, letter and policy of the law, and abundantly support the ruling of the trial court in this regard.

Of course, if a railroad company should undertake to condemn land for a purpose that was not within the scope of the powers and purposes legally allowed to railroads, such a proceeding would not only be *ultra vires,* but would be a taking of land for a private use. But the condemnation of land for the

purpose of constructing and operating thereon a railroad, in its very nature and essence, can not be the taking of land for any other than a public use.

Section 14 of article 12 of our Constitution declares: "Railroads heretofore constructed, or that may hereafter be constructed in this State, are hereby declared public highways, and railroad companies common carriers. The General Assembly shall pass laws to correct abuses and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads of the State, and shall from time to time pass laws establishing reasonable maximum rates for the transportation of passengers and freight on said railroads and enforce all such laws by adequate penalties." And the General Assembly has passed such laws (Sections 1126 et seq., article 2, chapter 12, Revised Statutes 1899), and provided for punishing any railroad that refuses to receive freight or passengers (Ibid., section 1122), and has required the railroad commissioners to see to the enforcement of the law (Ibid., section 1145, et seq.), and has expressly prescribed that mandamus shall lie to enforce the rights so secured, and in addition imposes a fine for a violation of the law (Ibid., section 1154).

If the Constitution is to be respected, it follows as surely as the shadow does the sun, that land condemned by a railroad can only be used for a public purpose—*is a public highway*— and therefore can not be used for private purposes. The land so appropriated and used is as much a public highway as a street in a city, so far as the use is concerned, and can no more be employed or used for private uses than a street can be.

This is the purpose and this the use for which the land is sought to be condemned. The right must exist, unless it be true that the length of the road or the volume of business likely to be done at once, limits or qualifies or takes away the right

or changes the character of the use. Such a contention manifestly disproves itself. But authority is not wanting to show that the courts have always refused to put any such construction upon such provisions in a constitution or in the laws. [Talbot v. Hudson, 16 Gray 417; Colo. & E. Ry. v. U. P. Ry., supra; Railroad v. Moss, supra; DeCamp v. Railroad, supra; Bloomfield N. G. L. Co. v. Richardson, 63 Barbour l. c. 448; Fanning v. Gilliland, 61 Pac. Rep. 636; Hartwell v. Armstrong, 19 Barb. 166; Aldridge v. T. C. & D. Ry. Co., 2 Stew. & Por. 199; Gilmer v. Lime Point, 18 Cal. 229'; Coster v. Tide Water Co., 18 N. J. Eq. 54; O'Reiley v. Kankakee, etc., Co., 32 Ind. 169; Riche v. Bar Harbor Water Co., 28 Albany L. J. 498; Phillips v. Watson, 63 Iowa 28; National Docks Co. v. Railway, 32 N. J. Eq. 755; Chicago, etc., Ry. v. Porter, 43 Minn. 527; Ross v. Davis, 97 Ind. 79; Lindsay Irrigation Co. v. Mehrtens, 97 Cal. 676; Pocantico Water Works Co. v. Bird, 130 N. Y. 249.]

These cases decide that the principle is the same whether all the people of the State or only all the people of the same locality have a right to demand and receive service from the corporation, then the use or purpose is public and not private.

In Dietrich v. Murdock, 42 Mo. l. c. 283, this court settled the law on this subject in this State, in the following concise and clear annunciation:

"The Legislature, in the exercise of its discretion in delegating to this company the right of eminent domain, evidently proceeded upon the idea that the public interest was to some extent at least to be subserved by its creation. What the precise degree of its usefulness to the public might be, is not, in our view of the case, necessary to be determined. We think the courts of the country ought not to interfere with the exercise of this discretion, except in those cases where it is manifest that private interests alone are to be promoted, and private

rights violated to the extent of taking the property of one individual and transferring it to another.    The sixth section of the act under which this company claimed its corporate existence declares that 'said company shall have the exclusive power to acquire, own, and employ steam power, or animal power, locomotives, cars, and carriages necessary for the transportation of passengers, coal, and every description of personal property on said road for themselves and other persons.'    Whether the private interests of this company were such as to require the construction of this road, or constituted the main reason for the act of incorporation, with the power conferred by it, is not material.    It is enough that, by the terms of the law, it is made a public corporation for the use and benefit of that particular section of the State.    The public had a right to demand that the means of transportation, both for passengers and freight, commensurate with its wants, should be provided by the company.    Any failure of its duty to the public in this particular, and to transport passengers and freight when offered for that purpose, would have subjected the company to an action for damages.    It must be assumed, then, that the grant of authority to the company to condemn the land necessary for a road-bed was a rightful exercise of legislative discretion."

To my mind the principle is axiomatic—a truism—and needs no precedent to prove or support it.    It is absolutely incomprehensible to my mind to contend for such a construction in the face of the Constitution and laws of this State.    If the plaintiff condemns this land, the Constitution at once impresses it with a public use.    The plaintiff can not use it for any other purpose.    It must serve all people alike or it can be compelled by mandamus to do so and forced if it refuses.    The fact that all the people of the State do not need it, does not change its character or the use it can legally put the land to.    No railroad serves all the people.    It can only serve the public living

along its line or desiring to travel over it, and if it does this its rights and powers and duties are the same under the Constitution and laws of this State whether it is only ten miles long or is a monster railroad girding the State from one end to another.

## II.

The defendants contend, however, that there is no necessity for this railroad or this proceeding because the Kansas & Texas Coal Company has an ample remedy under section 1119, Revised Statutes 1889 ; that is, that section provides that when any person owns a coal, lead, iron or zinc mine located near or within a reasonable distance of any railroad track, and the railroad commissioners are of opinion that the amount of business is sufficient to justify it, such owner may, at his own expense, build and keep in repair a switch leading from the railroad to such mine and the railroad company is required to furnish the switch-stand and frog and other necessary material for making connection with its track and to make such connection —the mine owner to pay the actual cost thereof.

It is apparent, however, that this could only be done where the mine owner owns the ground or right of way over which the switch is to run.    If he does not own it, he is, of course, not in a position to construct a private switch, for he has no power to condemn a right of way and can not demand that the railroad company shall exercise its power of eminent domain to acquire such a right.

This thought evidently came to defendant's counsel when making this claim, for they follow it up by calling attention to sections 9559 and 9560, Revised Statutes 1899, as affording another remedy.    That is, those sections provide that if any person owns land lying within twenty miles of a railroad and has no access to such railroad by any public road running from

such lands to such railroad, "convenient for mining, agricultural or commercial purposes," such owner may petition the county court for the establishment of a private road, and the court shall appoint commissioners to assess the damages to the owners of the lands through which such private road will pass, and the proceedings shall be the same as provided for the establishment of a private road (Section 9459, Revised Statutes 1899 et seq., the petitioner to pay the damages) but such owner may construct and use on such private road a tramway for the purpose of hauling and carrying coal and other products to such railroad, and such road shall not be less than twenty nor more than forty feet wide.

In other words, the contention amounts to this, that the Texas & Kansas Coal Company, a business corporation, without the power of eminent domain, may in this way have the county court condemn a private road, not less than twenty nor more than forty feet wide, and that company may construct thereon a tramway for hauling its coal to the railroad, and in this way other persons' land or even defendant's land may be condemned for a use which it is claimed is a private and not a public use, but the plaintiff railroad can not condemn this land.

Even if all this be true it is no defense to this action. Neither of the remedies afforded by these provisions of the Statutes is exclusive nor do they supersede or take away the right of eminent domain possessed by the plaintiff. It may also be doubted if the last-named remedies would be adequate even for the transportation of the volume of coal now being produced. Seven hundred tons of coal a day may possibly be moved over such a tramway along a private road, but it would be rather an obsolete method of hauling that much freight every day in the year, and might have a tendency to increase the

price of coal to the consumer. A wagon train of sufficient number might haul seven hundred tons of coal a day, but it would scarcely be deemed an up-to-date method of transporting that much freight. A tramway is better than a wagon train, but is as much inferior to a railroad train as it is superior to a wagon train for such purposes.

## III.

The defendants further claim that there is no necessity for locating the plaintiff's railroad at the proposed place and that it could just as easily be located somewhere else (as for instance on the one hundred foot strip to the east of this property which is owned by the Kansas & Texas Coal Company) where it would not interfere with the defendant's road or its business.

The answer to this is obvious; the railroad company has the right of eminent domain; it is given the privilege by the Legislature to select the location it prefers upon paying therefor, and therefore the courts have no right to deny the exercise of the power vested in the company either absolutely or because the court may think some other location is as good or better.

In speaking on this subject, Lewis on Eminent Domain, volume 1, section 286, says: "This is a matter which rests wholly with the Legislature. The Legislature may designate particular property to be taken, or this may be left to the discretion of those upon whom the authority is conferred, with or without limitations. In the absence of any statutory provision the particular route to be followed between designated points in case of a railroad or similar way, rests in the discretion of the company."

This question, however, was set at rest in this State in the case of St. L. H. & K. C. Ry. Co. v. Hannibal Union Depot Co., 125 Mo. l. c. 93, 94, where MACFARLANE, J., said:

"But it is said that there is no such necessity for the appropriation of a part of defendant's property as justifies the exercise of the power of eminent domain. The use of land for railroad tracks has ever been regarded as a public use. Counsel does not question this proposition, but insists that defendants' property ought to be exempt if plaintiff has other routes over the lands of other proprietors which could be used in reaching the terminus of the road. In other words, that defendant's property, being already devoted to one public use, can not be taken unless the necessity is so absolute that without it the grant itself will be defeated. That the necessity must be beyond plaintiff's control, and not one created by itself for its own convenience, or for the sake of economy.

"It is undoubtedly true that 'the right of eminent domain rests upon necessity and that alone. Beyond this there is no right.' · [Railroad Co.'s Appeal, 93 Pa. St. 150.] But it is also true that the sovereignty must be the judge of the necessity of taking the property, and the Legislature has delegated to railroad corporations the right to exercise the power, and the courts of this State have always held the use of land by a railroad to be for a public use. The sovereignty has lodged with railroad companies the power of selecting and adopting their own routes subject only to such limitations as have been imposed. Whenever the use of private property, on the line adopted, is necessary, the necessity exists. There is no distinction in this respect between private and corporate property, except when the exercise of the power as to the latter should 'materially interfere with the uses, to which, by law, the corporation holding the same is authorized,' to apply it."

The defendant is in error in saying the plaintiff owns a right of way one hundred feet wide lying just east of the land sought to be condemned. The plaintiff does not own any such land. The Kansas & Texas Coal Company owns a strip of

land one hundred feet wide which lies east of the defendant coal company's land, and by refusing to recognize the separate identities of the plaintiff and the Kansas & Texas Coal Company, and treating the latter as the owner of the plaintiff, the defendants base their claim that the plaintiff owns the hundred-foot strip.     This contention is without legal foundation.     The Kansas & Texas Coal Company would have the same right to object to the condemnation of its land that the defendants have to object to the condemnation of their land.     If the contention were well founded the result would be that the plaintiff could not condemn any land, for every other landowner would likewise have the same right to object to his land being condemned. Yet in McGrew's case the right of condemnation was held to exist, and McGrew's land was taken notwithstanding it was used as a coal mine.

## IV.

The defendants next insist, and the trial court decided, that this plaintiff can not condemn this land because the use of the land by plaintiff for a railroad track would materially interfere with the use of the land to which by law the defendant coal company is authorized to put the line.

This contention and decision is based upon a construction put upon section 2741, Revised Statutes 1889 (section 1272, Revised Statutes 1899).     That section is as follows:     "In case the lands sought to be appropriated are held by any corporation, the right to appropriate the same by a railroad, telephone or telegraph company shall be limited to such use as shall not materially interfere with the uses to which, by law, the corporation holding the same is authorized to put said lines," etc.

The plaintiff contends, first, that this statute only applies to any corporation that possesses the power of eminent domain

and has already applied the land to a public use and that it does not apply to land owned by a business corporation, organized for private gain and that performs no public function and renders no public service, and that the defendant coal company is not within this class, and, second, that if this is not so, then the section is void because in conflict with section 4 of article 12 of the Constitution, which provides that, "The exercise of the power and right of eminent domain shall never be so construed or abridged as to prevent the taking, by the General Assembly, of property and franchises of incorporated companies already organized, or that may be hereafter organized, and subjecting them to the public use, the same as that of individuals. The right of trial by jury shall be held inviolate in all trials of claims for compensation, when in the exercise of said right of eminent domain, any incorporated company shall be interested either for or against the exercise of said right;" and third, that the proposed use of the land by the plaintiff company will not materially interfere with the use thereof by the defendant coal company.

Section 2741, Revised Statutes 1889, first appeared in the statutes of this State as section 8, of chapter 66, General Statutes 1865, and has been continued in the revisions in the same words ever since, except that the word "telephone" has been inserted between the words "railroad" and "telegraph."

This section 2741, Revised Statutes 1889, follows section 2740, Revised Statutes 1889, which provides: "No telephone or telegraph company shall, by virtue of this article, be authorized to enter or appropriate any dwelling, barn, store, warehouse or similar building, erected for any agricultural, commercial or manufacturing purposes, or to erect poles so near thereto as materially to inconvenience the owner in their use or to occasion any injury thereto," and this section was section 7 of article 66, General Statutes 1865, except that the word

"telephone" has been added.

It has been decided in this and other jurisdictions, and is the accepted law, that the fact that land sought to be condemned for a public use is held, owned and used by a corporation organized for private gain is no defense to the right of condemnation. [Twelfth Street Market Co. v. P. & R. T. R. Co., 142 Pa. St. 580; Lewis on Em. Dom., sec. 274, and cases cited.]

The same principle is declared even where the property sought to be condemned is held and used by a corporation possessing the power of eminent domain and is using the same for a public purpose. [St. L. H. & H. K. Ry. Co. v Hannibal Union Depot Co., 125 Mo. 82; Kansas City v. Oil Co., 140 Mo. 458; Kansas City Belt R. R. Co. v. K. C. St. L. & Chicago R. R. Co., 118 Mo. 599; Lewis on Em. Dom., sec. 274, and cases cited.] The only qualification to this rule is that such property can not be taken from one corporation by another corporation, to be used for the same purpose in the same manner that it was used by the corporation that first appropriated it to such use and purpose. [Lewis on Em. Dom., sec. 276.] In other words, every corporation holds property subject to the right of the State to take it for another public use, whenever in the discretion of the Legislature the exigencies require its use for such other purpose, and this is true even as to the franchise itself of any corporation. [Twelfth St. Market Co. v. Railroad, 142 Pa. St. 1. c. 589; Sunderland Bridge, 122 Mass. 459; In re Opinion of the Justices, 66 N. H. 629; N. Y. Cent. & H. R. Ry. Co. v. Metropolitan Gas-Light Co., 63 N. Y. 326; In re Bellona Co., 3 Bland (Md.) 442; Enfield Toll Bridge Co. v. Railroad, 17 Conn. 40; Boston & L. R. Corp. v. Salem Ry., 2 Gray (Mass) 1.]

This is what is meant by section 4 of article 12 of the Constitution, which declares that the exercise of the power and

Vol 161 mo—21

right of eminent domain shall never be so construed or abridged as to prevent the taking by the General Assembly of the property and franchises of any incorporated company, already or hereafter organized, and subjecting them to public use the same as that of individuals.

In McGrew v. Railroad, 104 Mo. 282, it was held that the property of an individual coal miner might be taken for railroad purposes. In C. P. & St. L. Ry. v. Wolf, 137 Ill. 1. c. 365, the property of a coal mining company was held subject to condemnation for railroad purposes, notwithstanding the construction of the railroad would destroy a tramway that extended from the shaft of the mine to the tracks of another railroad. In Railroad v. Depot Co., 125 Mo. 1. c. 92, the property of a corporation used for a union depot was held subject to condemnation for railroad purposes. In the Twelfth St. Market case, 142 Pa. St. 542, the property of a corporation used as a public market was held subject to condemnation for railroad purposes.

In the light of this constitutional provision and of these adjudications in this and even in other States that have no such constitutional reservation, it can not be said that the Legislature intended by section 2741 to say, or had the constitutional right to say, that property held by any corporation, public or private, possessing or not possessing the power of eminent domain, should not be subject to condemnation for another or superior public use. That section is a simple legislative declaration that the use of the land for railroad purposes is not a superior use to the use of the land by the company that owns it and has already devoted it to one use authorized by law.

It goes without saying that one railroad company could not condemn the right of way of another railroad company and use it for the same purpose as the first company was using it. But the State has the power to condemn and take away not only

the right of way of a railroad company, but also its franchises.

Applying these principles to the case at bar we find that the defendant company's charter does not authorize it to hold or use land for railroad purposes, but that it is only authorized to buy, sell and operate coal lands and coal mines, to buy and sell merchandise and to own and operate electric light and power plants and to sell electric light and power.   The power to build and operate a railroad is not expressly conferred, nor is it necessarily implied in the powers conferred.   So, while the defendant coal company can own and use lands for mining coal, that is the full extent of the use which its charter gives it to make of this land.   And if it be true as was decided in McGrew v. Railroad, 104 Mo. 282, that the property of an individual miner used for mining coal, can be condemned for railroad purposes, then it follows, that under section 4 of article 12 of the Constitution, the property of any incorporated company used for the purpose of mining coal is likewise subject to condemnation, and this and all courts are expressly prohibited by that section of the Constitution from construing the property of an incorporated company exempt from condemnation when the property if held by an individual would be subject to condemnation.

The Legislature therefore has not said by section 2741, that property held as this property is held shall be exempt from condemnation, and if the Legislature had said so it would be an unconstitutional act, because it did not make property, held and used in like manner by an individual  also exempt from condemnation.

It is within the province of the Legislature to exempt any kind of property from the power of eminent domain delegated by the State to a corporation, and section 2740 does exempt dwelling houses, etc., from being taken or used by telegraph or telephone companies, but under the Constitution it is beyond the

power of the Legislature to exempt any class of property from condemnation if it is owned by any kind of an incorporated company and to make it subject to condemnation if it is owned by an individual.

## V.

The circuit court, however, assumed that section 2741 was a valid enactment, and held that the condemnation of this land by the plaintiff for railroad purposes would materially interfere with the use to which the defendant was authorized by law to apply it.

It has already been pointed out that the defendant coal company has no power under it charter to construct, operate or maintain a railroad and hence it is not authorized to use any part of the land for railroad purposes.

But aside from this, the facts are simply these: The center of the defendant's track will be fourteen feet from the center of the plaintiff's track. The defendant's testimony shows that tracks thirteen feet from center to center is a safe construction. The evidence further shows that the New York Central and Pennsylvania roads have parallel tracks whose centers are only twelve feet and twelve feet and two inches apart. Assuming that the cars are nine feet in width, a car on one road would extend four and a half feet towards the cars on the other road, so the two would occupy nine feet of the fourteen feet space between the centers of the two tracks. This would leave a space of five feet between passing cars. It needs nothing but common sense to determine that as cars must run on fixed rails there can be no danger in running cars on separate tracks when they can not get closer than five feet to each other. It is too plain to admit of debate that the plaintiff's railroad so constructed could not interfere in any manner with the

operation of the defendant's railroad.

The plaintiff's railroad could not interfere with the operation of the mine, for the shaft to the mine (which is operated by the Kansas & Texas Coal Company and not by the defendant coal company) is from fifty-six to seventy-two feet west of the west line of the strip sought to be condemned and where the plaintiff's railroad will run. The switch or loading tracks used by the defendant company are located on this strip of fifty-six to seventy-two feet of land, and are all between the main track of the defendant company and the shaft to the mine.

So that it can not be said that the construction of the plaintiff's road will in any manner whatever interfere with the operation of the mine or the use to which the defendant has applied or is authorized to apply the land. But even if it did so interfere the McGrew case, supra, is ample authority for holding that the land is not exempt from condemnation for railroad purposes.

The defendants evidently realize that this is true, for they seek to strengthen their case by showing that they contemplate opening a new mine south of the Watson mine and had already surveyed and located a track to such new mine which will leave the track running to Mine No. 7 and run to the Watson mine, and that it will need the land here sought to be condemned to use for such new track.

Courts must deal in cases like this with the conditions that exist at the time the condemnation is asked, and can not take into account conditions that may or may not arise or be created thereafter. [Butte A. & P. Ry. Co. v. Montana U. Ry. Co., 16 Mont. 504; Col. E. Ry. Co. v. Union Pac. Ry. Co., 41 Fed. Rep. 293.]

It furthermore appears from the record herein that the defendant company on the twenty-first of February, 1899, proposed to the plaintiff company to accept three thousand dollars

for the right of way here sought to be condemned, with an agreement as to crossings and protection to defendant's road where the grade of the plaintiff's road is below that of defendant's road. The plaintiff offered three hundred dollars, and refused to pay three thousand.

Manifestly it can not be true that the location and operation of the plaintiff's railroad upon this land would materially interfere with the present or future use of the land for mining purposes, or with the operation of the defendant's railroad, much less that it would practically destroy defendant's business and road, if the defendant was willing to sell this identical land to the plaintiff for a railroad right of way for three thousand dollars. The real dispute between the plaintiff and defendants, therefore, is the difference between $3,000, the price the defendants' offer to take, and $300, the price the plaintiff offers to give for the property in question to be used for a railroad right of way.

It follows from what has been said that the circuit court erred in refusing to appoint commissioners to assess the damages for the taking of the land for railroad purposes and in entering judgment for the defendants, and therefore the judgment of the circuit court is reversed and the cause remanded with directions to appoint such commissioners and to proceed in accordance herewith. *Sherwood, Robinson* and *Brace, JJ.,* concur. *Burgess, C. J., Valliant* and *Gantt, JJ.,* dissent.

## DISSENTING OPINION.

VALLIANT, J.—The principle of law involved in this suit is so important and the consequences that may result from the establishment of the doctrine contended for by the plaintiff are so serious, that I feel constrained to, at least briefly, express the reasons why I am unable to concur in the opinion

of the majority of the court.

The evidence in the record showed to the satisfaction of the trial court, and it shows to my satisfaction, that this is a controversy between two rival coal companies wherein one, having assumed for the purpose the legal garb of a railroad corporation, is endeavoring to shut its rival out from the market and reduce it to a dependency. The Kansas & Texas Coal Company and the Northwestern Coal & Mining Company are both owners and operators of coal mines in the same vicinity and rivals in business. Each company owns railroad tracks which it uses for the sole purpose of carrying the products of its own mines to a convenient point on the nearest public railroad. The defendant company is incorporated under the general statute relating to business and manufacturing corporations, and the Kansas & Texas Coal Company is a corporation of like character. But the stockholders and officers of the latter company have availed themselves of the provisions of the general statute in relation to railroads and have taken out a charter under the statute also, under the name of the Kansas & Texas Coal Railway and that corporation holds title to the railroad tracks in the service of the Kansas & Texas Coal Company, and is the plaintiff in this case. The identification of the two corporations in actual unity of interest and personnel of the incorporation is shown beyond question. That the so-called railroad corporation is but the agent of the coal company of that name, with no business, past, present or in contemplation but that of carrying the coal company's product to the nearest railroad, is also beyond question. Now the Kansas & Texas Coal Company proposes in this proceeding in the name and in the garb of its *alter ego,* the Kansas & Texas Coal Railway, to condemn a right of way over the property of the defendant coal company for the construction of other railroad tracks which are in fact designed for the exclusive use of the Kansas &

Texas Coal Company. The defendant by its answer says, and by its proof shows, that this is in fact but the taking of private property for a private use, that if the plaintiff is permitted to do as it proposes it will shut the defendant out from market and ruin its business, that it is an abuse not a use of the power of eminent domain. But the court is asked to say in reply: that question of fact we can not look into; the plaintiff comes with a charter in due form which denominates it a railroad corporation, no one but the State can question its right to exercise all the prerogatives of a railroad corporation, and if it condemns land for its use no one can question that that is a public use; its charter is conclusive on that point, and if the effect is to shut you out from market except upon such terms as your rival road may see fit to prescribe, still the court can not look beyond the charter for the real truth.

The defendant shows by its answer and evidence that the plaintiff's demand is for but a wanton destruction of defendant's business, that the plaintiff already has a right of way just as available as that sought to be condemned. But we are told that our answer to the defendant must be: we can not dictate to a railroad corporation where it will locate its lines, nor can we question its motives. The defendant being only a mining corporation, has no power to condemn, therefore, if its rival in this proceeding is permitted to lay its tracks as it may and as it is apprehended it will, the defendant can not cross the tracks with its railroad and is shut in. The evidence shows that if the plaintiff lays and operates its tracks so close to those of the defendant, whilst there may yet be room for trains to pass, still the appliances required for conveniently and economically handling its business can not be used and even the lives of its employees will be endangered. But the answer to all this is that the charter is conclusive, and the courts are not only powerless to grant any relief, but must even suffer themselves to be

used to effect the gross wrong and abuse. If that is the law we are in a bad way. If courts are so encrusted in form that they are not only powerless to do right, but must even yield themselves as instruments to effect a wrong, we are far from perfection. I do not believe that that is the law. When a suitor comes into court and asks its aid, the court has a right to know in what character he comes, real or fictitious. In my opinion, therefore, when the trial judge became satisfied that the real plaintiff in this case was the Kansas & Texas Coal Company wearing the mask of a railroad corporation, he had the authority and it was his duty to refuse to appoint commissioners looking to a condemnation of the defendant's property.

Even if a real railroad corporation should come into court seeking to condemn land ostensibly for railroad use and it should be shown to the court, as clearly as the true facts were shown in this case, that the real object was to obtain a site for a summer villa for its president, the court should refuse to appoint commissioners. Property taken for the real use of a real railroad company is taken for a public use, and the courts so declare as a matter of law, but the courts have never declared that all property sought to be taken in the name of a railroad corporation is conclusively adjudged to be sought for a public use, and that no inquiry into the truth can be had. It is argued in behalf of plaintiff in error that a railroad corporation chartered for the sole purpose of carrying to market the product of coal mines owned by the same men who own the railroad is engaged in a public service and may exercise the right of eminent domain, and numerous cases are cited as supporting that proposition. But that proposition does not measure up to the point the plaintiff seeks to reach in this case. If it has ever been decided that a coal company could take on itself the character of a railroad company for its own private use and exercise the right of eminent domain for the sole purpose of closing out its

rival in business, and preventing another coal mining company from bringing its product to market, and that the courts were bound to assist it in that purpose, I have not seen such decision, and indeed would not care to see it.

There is nothing in the condemnation procedure prescribed by our statute that marks such narrow bounds for the court as to reduce it to a mere ministerial office without judgment or discretion. And if there is no precedent for the court in such matter to exercise a judicial power to reach the truth and justice of the case, it is our duty to make a precedent.

It is also argued that whatever may be the purpose of the plaintiff in seeking to condemn its right of way over defendant's land, when its road is once built it becomes a public highway, and the plaintiff can be compelled by mandamus to carry the defendant's coal on the same terms that it carries the coal of the Kansas and Texas Coal Company. True as that may be in theory, courts can not pretend not to know that it is only theory. The court should not require the defendant to submit to a wrong in the first place with a half promise to redress his injury at some future time.

The trial court was of the opinion that the condemnation of the forty-foot strip of defendant in question and the subjecting of it to the use of the plaintiff's purpose would materially interfere with that use, that the defendant corporation had by law the right to use it, and the condemnation was therefore forbidden by section 2802, Revised Statutes 1889, now section 1350, Revised Statutes 1899. That section provides that when the property sought to be condemned is already held by a corporation, the right to condemn "shall be limited to such use as shall not materially interfere with the uses to which by law the corporation holding the same is authorized to put said property."

Article 12, section 4, of the Constitution, ordains that

the power of eminent domain shall not be so abridged as to prevent "the taking of property or franchises of incorporated companies * * * and subjecting them to the public use, the same as that of individuals." But that does not mean that the property of a corporation which is already being applied to a particular public use may be taken from it by another corporation for the purpose of applying it to the same or even to another public use, if thereby the public use which it is already serving is to be destroyed or impaired. So, this section of the statute is not repugnant to that clause of the Constitution.

It is contended by plaintiff that the corporation whose property is by the statute protected to some extent from condemnation is only a corporation which has the right to exercise eminent domain, and that the property so exempted is such as is held by it either by grant or condemnation for a public use. On the other hand, it seems to be argued that it applies to all property of all corporations. I am not inclined to the extreme view of either side of that question. But I think that the statute was intended to limit the condemnation of property held by a corporation for a public use even though the corporation was not such as is authorized to exercise the right of eminent domain, and I do not think that it was designed to affect property that is held for merely private use. We may suppose two concerns each conducting the same kind of business, say a mercantile business side by side; the one is owned by a corporation, the other by an individual. The law could not have contemplated that the property of the individual might be taken and that of the corporation exempt. And on the other hand we recognize that there are corporations whose property is being used for a public purpose, yet which have not the power to condemn because they are not organized under the statute which confers such power. Many street

railroad companies and some other corporations are of this character; they are public carriers and their property is in public use, but they are not organized under the general railroad statute.

Now it is argued in this case that although the defendant corporation owns and operates a railroad, yet as it is not chartered as a railroad corporation its railroad is not devoted to a public use, whereas the plaintiff being so chartered its use is a public use. But we have seen that the actual use, past, present and prospective, to which the railroads of each corporation is devoted, is exactly the same. The fact is the same in each instance. If a difference exists it is only in theory, and that theory purely fictitious. We are asked to say that it is lawful for the plaintiff to condemn the defendant's property on the theory that in defendant's hands it is being devoted to private use, yet when condemned it is in plaintiff's hand to be in fact devoted to exactly the same character of use; that the charter makes one private and the other public, though they are in fact the same.

If there is any force in the decisions referred to, which hold that a railroad designed and used exclusively to bring to market the product of a coal mine is in public service, they establish the fact that the use to which the defendant is devoting the forty foot strip in question is a public use, and that being so the plaintiff, even if it be a railroad corporation, is by the terms of the statute quoted, forbidden to impair the defendant's use of the same.

For these reasons the action of the trial court in refusing to appoint commissioners was right, and its judgment should be affirmed. *Burgess, C. J.,* and *Gantt, J.,* concur in the above views.